KOKOSING CONSTRUCTION CO., Appellant,

v.

DIXON et al., Appellees.

[Cite as *Kokosing Constr. Co. v. Dixon* (1991), 72 Ohio App.3d 320.]

Court of Appeals of Ohio,
Montgomery County.

No. CA–12168.

Decided Jan. 31, 1991.

*Louis & Froelich Co., L.P.A.,* and *Jeffery E. Froelich,* for appellant.

*Kenneth Barden,* Chief General Counsel, for appellee city of Dayton.

*Coolidge, Wall, Womsley & Lombard Co., L.P.A.,* and *Terrence Fague,* for appellee Shook, Inc.

GRADY, Judge.

Plaintiff–Appellant, Kokosing Construction Co. (Kokosing), appeals the trial court's decision denying it injunctive relief and ordering the city of Dayton to execute a construction contract with Shook, Inc. (Shook). The trial court found that Dayton acted within its discretion in rejecting Kokosing's bid, but abused its discretion in rejecting Shook's bid as nonresponsive as its affirmative-action statement was not signed. The court characterized this omission a "clerical oversight" that gave Shook no competitive advantage in the bidding process.

Kokosing appeals this decision, essentially presenting two issues for our consideration. First, did the trial court abuse its discretion in finding that Dayton acted within the scope of its discretion by reletting a construction contract on which Kokosing was allegedly the lowest responsive bidder? Second, did the trial court abuse its discretion in finding that Shook's failure to sign an affirmative-action statement was a clerical oversight which did not render its bid nonresponsive?

For reasons explained more fully below, we conclude the trial court did not abuse its discretion. The judgment of the trial court will, accordingly, be affirmed.

I

At the heart of this dispute is a series of construction bids submitted to Dayton in response to an invitation to bid for contracts to construct improvements at the Ottawa Water Treatment Facility. In 1989, Dayton invited bids on Contract Nos. 4 and 4A and 5 and 5A. Contract Nos. 4 and 5 were contracts for general construction at the facility while Contract Nos. 4A and 5A were subcontracts for electrical work to be completed in conjunction with the general construction.

The invitation to bid on Contract Nos. 5 and 5A contained the following statement:

"The estimated contract construction costs are presented below. No award shall be made if the lowest bid (total of individual bids) exceeds the total estimate.

| | |
|---|---|
| "General Construction Contract No. 5: | $6,246,000 |
| "Bid Package No. 5A: | $1,237,000 |
| "Contract No. 5 Total Estimate: | $7,483,000 " |

Under this bid review and contract-award scheme, applicable to all bids under consideration, no contract would be awarded if the combined bids for the general contract and corresponding subcontract exceeded the engineer's total estimate for the contract.

The legal notice soliciting bids for Contract Nos. 4 and 4A and 5 and 5A described the improvements to be made to the water treatment facility. It then went on to state:

"GENERAL CONSTRUCTION CONTRACT NO. 4 [5] BID PACKAGE 4A [5A] ELECTRICAL

"Once a successful bidder is identified for Bid Package 4A [5A], the Contract will be assigned to the successful bidder of the General Construction Contract who will execute one single contract with the City of Dayton for all work.

"Each separate proposal shall be complete in all respects as required by the Contract Documents. Combined bids will not be accepted.

"* * *

"*Each bidder must ensure that all employees and applicants for employment are not discriminated against because of race, color, religion, sex or national origin.*

"No bids will be considered unless the bidder is represented at a pre-bid conference * * *. The purpose of this pre-bid conference is to explain the

provisions of Section 35.14 and Sections 35.32 of the Revised Code of General Ordinances regarding equal employment opportunity provisions and minority business enterprises (MBE) certification, and the rules and regulations of the Human Resources Counsel with respect thereto.

*"The Director of the Department of Water reserves the right to reject any and all bids."* (Emphasis added.)

When Dayton received bids for Contract Nos. 4 and 4A, the combined proposal of the two lowest bidders exceeded the engineer's total estimate for the contract. Although the bid for Contract No. 4A was under the engineer's estimate, the corresponding bid for Contract No. 4 substantially exceeded the estimate. The city then discovered that the engineer's estimate for Contract No. 4 was wholly inadequate. Rather than reject both bids, as was Dayton's right, the city held the lowest bid for Contract No. 4A and relet Contract No. 4 in light of a revised engineer's estimate.

Kokosing and Shook submitted competing bids for Contract No. 5. Kokosing's bid was approximately $23,000 under the engineer's estimate and Shook's bid was approximately $332,000 under the estimate. However, the lowest bid on the subcontract, Contract No. 5A, exceeded the engineer's estimate by approximately $120,000. When Shook's bid was coupled with the subcontractor's bid, the combined proposal was below the engineer's total estimate for the project. However, because Shook did not sign its affirmative-action statement, Dayton rejected the bid as nonresponsive. Kokosing submitted a properly executed affirmative-action statement.

Kokosing's bid was deemed the lowest responsive bid. However, when its bid was coupled with the lowest bid for Contract No. 5A, the combined proposal exceeded the engineer's total estimate by approximately $97,000. Under Section 91 of the Dayton City Charter, the city was prohibited from awarding the contract. However, unlike the situation with Contract Nos. 4 and 4A, the city rejected both bids and relet the project as a single contract. Bruce Henkel, chief engineer for the water division, testified that the city took this approach because:

"In this case, this is the last contract [contracts 5 and 5A] of a series of five; the budget for the entire project is basically at its limit, we saw no way that we could rebid the package without adding more money to the electrical portion, if we were to go that way. Since the general portion was under by a very narrow margin, we thought we could take advantage of a combining of the two packages into one and rebid it as one contract versus two."

By combining Contract Nos. 5 and 5A into a single contract the city hoped to save some $97,000.

On February 7, 1990, Kokosing filed a complaint and motion for a temporary restraining order, preliminary injunction and permanent injunction seeking an order that Dayton award Kokosing bid Contract No. 5. The next day the trial court issued a temporary restraining order forbidding Dayton to relet Contract No. 5. Shortly thereafter, on March 1, 1990, Shook filed a motion to intervene pursuant to Civ.R. 24, and a complaint alleging that it had submitted the lowest responsive bid. Shook sought an order that Dayton award it bid Contract No. 5. The matter came for a hearing on March 2, 1990.

Following the hearing, the trial court entered a decision, entry and order granting Shook a permanent injunction prohibiting Dayton from reletting the contract. The court refused to "judicially amend the City of Dayton's decision and decisionmaking process." The trial court found Shook's failure to sign its affirmative action statement was a clerical error that did not render the bid nonresponsive. The trial court then ordered Dayton to award the contract to Shook contingent upon the signing of the affirmative action statement.

Kokosing filed a timely notice of appeal from this decision, presenting four assignments of error. Dayton filed a cross-appeal challenging the trial court's decision ordering it to execute Contract No. 5 with Shook. However, Dayton withdrew its cross-appeal at oral argument.

## II

Kokosing states in its first assignment of error:

"The trial court erred in not finding that the city of Dayton's failure to award Kokosing Contract No. 5 constituted an abuse of discretion."

Under Ohio law, public contracts are generally awarded according to the "lowest and best bid." R.C. 735.05. See, also, Dayton Revised Code of General Ordinances, Section 35.13. Such a policy vests municipal corporations with wide latitude in determining which bids meet the qualification of the "lowest and best." In such matters, municipal officials are presumed "in the absence of evidence to the contrary [to have acted] within the limits of the jurisdiction conferred by law * * * and not to have acted illegally but regularly and in a lawful manner." *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202. See, also, *State, ex rel. Shafer, v. Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 50 O.O. 465, 113 N.E.2d 14; *State, ex rel. Gerspacher, v. Coffinberry* (1952), 157 Ohio St. 32, 47 O.O. 31, 104 N.E.2d 1; *Bloch v. Glander* (1949), 151 Ohio St. 381, 39 O.O. 216, 86 N.E.2d 318. See, generally, Note, *Dayton, ex rel. Scandrick v. McGee: Abuse of Discretion in Competitive Bidding on Public Contracts in Ohio* (1982), 11 Cap.U.L.Rev. 821.

The presumption favoring the regularity and lawfulness of administrative actions imposes on the party challenging such actions the burden to show that the municipal corporation abused its discretion. As we noted in *Altschul v. Springfield* (1933), 48 Ohio App. 356, 362, 1 O.O. 522, 193 N.E. 788:

" * * * [a] court cannot interfere in the exercise of * * * discretion unless it clearly appears that city authorities in whom such discretion has been vested are abusing the discretion so vested in them."

See, also, *Sandusky Properties v. Aveni* (1984), 15 Ohio St.3d 273, 15 OBR 408, 473 N.E.2d 798; *State, ex rel. Executone of Northwest Ohio, Inc., v. Commrs. of Lucas Cty.* (1984), 12 Ohio St.3d 60, 61, 12 OBR 51, 52, 465 N.E.2d 416, 417; *Pincelli v. Ohio Bridge Corp.* (1966), 5 Ohio St.2d 41, 34 O.O.2d 55, 213 N.E.2d 356. Abuse of discretion is found only upon an affirmative showing that the municipal corporation's attitude was arbitrary, unreasonable or unconscionable. See, *Dayton, ex rel. Scandrick, v. McGee* (1981), 67 Ohio St.2d 356, 21 O.O.3d 225, 423 N.E.2d 1095.

While municipal corporations are vested with broad discretion in matters related to public contracts, that discretion is not limitless. A municipal corporation can abuse its discretion when the award of a public contract is based on nebulous or nonexistent standards. In *Dayton, ex rel. Scandrick v. McGee, supra,* 67 Ohio St.2d at 360, 21 O.O.3d at 226, 423 N.E.2d at 1097, the Ohio Supreme Court stated:

"The evil here is not necessarily that 'resident' bidders are preferred but that there are absolutely no guidelines or established standards for deciding by how 'many percentages' a bid may exceed the lowest bid and yet still qualify as the 'lowest and best' bid. *Absent such standards, the bidding process becomes an uncharted desert, without landmarks or guideposts, and subject to a city official's shifting definition of what constitutes 'many percentages.'* Neither contractors nor the public are well served by such a situation.

" * * * *The presence of standards against which such discretion may be tested is essential;* otherwise, the term 'abuse of discretion' would be meaningless." (Emphasis added.)

Cf. *State, ex rel. Hoeffler, v. Griswold* (1930), 35 Ohio App. 354, 172 N.E. 438 (Discretion in awarding bid can only be exercised respecting those matters that could be reasonably anticipated from the specifications.).

In this case the bid specifications for both Contract Nos. 4 and 4A and Contract Nos. 5 and 5A contained two important provisions. First, the specifications stated that Dayton would not award a contract if the combined

bids exceeded the engineer's total estimate for the contract. Such a restriction was mandated by the city charter. Second, Dayton specifically reserved to itself the right to reject any and all bids, including even the lowest bid. See, *State, ex rel. Polaroid Corp., v. Denihan* (1986), 34 Ohio App.3d 204, 517 N.E.2d 1021. Thus, Kokosing knew from the outset that the combined bid had to be below the engineer's estimate, *and* the city could reject the bid outright even if it was the lowest.

The record establishes that when Kokosing's bid for Contract No. 5 was coupled with the subcontractor's bid for Contract No. 5A, the combined proposal exceeded the engineer's total estimate for the contract by some $97,000. Although Kokosing's bid was actually under the engineer's estimate for its part of the project, the city could reject the bid according to the terms of the bid specification. Such rejection did not constitute an abuse of discretion.

Nevertheless, Kokosing maintains, relying in part on the rule of *Dayton, ex rel. Scandrick, v. McGee, supra,* that the city employed unannounced standards when it awarded Contract No. 4A to the lowest bidder but rejected Kokosing's bid on Contract No. 5. We disagree.

The situation confronting us is different from that in *Dayton, ex rel. Scandrick, v. McGee, supra.* In that case, Dayton decided to award a public contract to one other than the lowest bidder for a reason not stated in the bid specifications; namely, that a contractor's residency was a consideration in awarding the contract. The Ohio Supreme Court found the use of this unannounced standard an abuse of discretion. *Dayton, ex rel. Scandrick, v. McGee, supra,* at 360–361, 21 O.O.3d at 227–228, 423 N.E.2d at 1097–1098. By contrast, the city's rejection of Kokosing's bid was based on the announced and known standard that the combined proposal must not exceed the engineer's estimate.

Further, the improvements at the Ottawa Water Treatment Facility were governed by a series of five separate general contracts and five separate subcontracts. Thus, the decision to hold open Contract No. 4A and rebid Contract No. 4 had no relationship to the city's decision to reject Kokosing's bid for Contract No. 5. The circumstance that necessitated reletting Contract No. 4 was the city's discovery that the engineer's estimate for that portion of the project was wholly inadequate and had to be adjusted upwards. There was no similar factor in the case of bids for Contract No. 5, the engineer's estimate apparently being quite adequate.

We conclude the trial court did not err in finding that the city acted within its discretion in rejecting Kokosing's bid on Contract No. 5. Kokosing's first assignment of error is, accordingly, overruled.

## III

Kokosing's three remaining assignments of error present related questions concerning the trial court's finding that Shook's failure to sign its affirmative action statement was an immaterial clerical error. We will, therefore, consider the three assignments of error together.

Kokosing states:

"The trial court erred in finding that Shook, Inc.'s lack of signature was a 'mere clerical error', and could be corrected after the bids were opened.

"The trial court abused its discretion in finding that the failure to sign the affirmative action statement and/or present a corporate resolution did not make the bid of Shook, Inc. nonresponsive.

"The trial court abused its discretion in awarding the contract to Shook, Inc."

Bids for public contracts must conform in all material respects to the contract specifications. Not every deviation from the specifications will, however, constitute a deviation that renders the bid nonresponsive. So long as a bid complies with the specifications in all material respects, and contains no irregularities which give one bidder a competitive advantage over others, the bid will be deemed responsive, notwithstanding the omission of an item called for by the specifications. See *Leaseway Distribution Centers, Inc. v. Ohio Dept. of Adm. Serv.* (1988), 49 Ohio App.3d 99, 550 N.E.2d 955. See, also, R.C. 9.312(A).[1] Thus, for a bid to be rejected as nonresponsive, the deviation must both be substantial and provide the bidder an advantage over his competitors. See, *e.g., Natl. Eng. & Contracting Co. v. Cleveland* (C.P.1957), 76 Ohio Law Abs. 303, 146 N.E.2d 340. Failure to specify a time for completion of the project, supply pertinent data that affects budgetary considerations, or include an affirmative action plan, are all examples of material deviations that render a bid nonresponsive. Cf. *Bale Contracting,*

---

1. Recently, R.C. 9.312 was amended to authorize political subdivisions of the state to adopt a policy requiring that public contracts be awarded to the lowest responsive bidder. Section 1, Am.H.B. No. 304, effective June 13, 1990. R.C. 9.312(A) now provides:

"(A) If a state agency OR POLITICAL SUBDIVISION is required by law OR BY AN ORDINANCE OR RESOLUTION ADOPTED UNDER DIVISION (C) OF THIS SECTION to award a contract to the lowest responsive and responsible bidder, *a bidder on the contract shall be considered responsive if his proposal responds to bid specifications in all material respects and contains no irregularities or deviations from the specifications which would affect the amount of the bid or otherwise give him a competitive advantage.* * * *" (Upper case indicates amendment; emphasis added.)

In that this provision was only recently amended, we agree with the trial court that R.C. 9.312 was not controlling at the time this matter came to trial. However, we do find persuasive this expression of the General Assembly's intent that contracts be deemed responsive if they meet the bid specifications in all *material* respects.

*Inc. v. Westerville* (1982), 7 Ohio App.3d 271, 7 OBR 351, 455 N.E.2d 517; *Natl. Eng. & Contracting Co. v. Cleveland, supra; Weiner v. Cuyahoga Community College Dist.* (1969), 19 Ohio St.2d 35, 48 O.O.2d 48, 249 N.E.2d 907.

■ Applying these considerations, we conclude the trial court did not abuse its discretion in finding Shook's bid adequately responsive. Dayton requires that all bids for public contracts contain an affirmative action statement. Dayton Revised Code of General Ordinances, Section 35.13. The record indicates that Shook completed and submitted a five page affirmative action statement, but failed to sign it. The city concluded that this omission rendered the bid nonresponsive. The trial court concluded the contrary.

We agree with the trial court's finding that the absence of a signature on the affirmative action statement does not constitute a material deviation. This is not the case of a bidder failing to supply the statement. See, *e.g., Weiner v. Cuyahoga Community College Dist., supra.* Rather, in this case the bidder, Shook, complied with all material parts of the specification. The city admitted as much when Bruce Henkel testified that but for the lack of a signature the affirmative action statement would have been satisfactory and Shook would have been awarded the contract. The absence of the signature simply was not so material as to render the bid nonresponsive. The deviation from the published requirement gave Shook no competitive advantage. To hold Shook's bid nonresponsive because of this minor deviation from the bid specifications was an abuse of discretion by the city, and the trial court correctly so found. Cf. *Leaseway Dist. Centers, Inc. v. Dept. of Adm. Serv., supra.*

In that Dayton indicated at oral argument that the city had executed the contract with Shook and waived any further objection to the trial court's order that Dayton so execute the contract, any error associated with that order is mooted. Kokosing lacks standing to make the same objection.

Kokosing's second, third and fourth assignments of error are overruled.

### IV

For the reasons stated above, we conclude the trial court did not abuse its discretion in awarding Contract No. 5 to Shook. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN, and FAIN, JJ., concur.