**BFI WASTE SYSTEMS OF OHIO, Appellant,**

**v.**

**CITY OF GARFIELD HEIGHTS et al., Appellees.**

[Cite as *BFI Waste Sys. of Ohio v. Garfield Hts.* (1994), 94 Ohio App.3d 62.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 64719.

Decided March 28, 1994.

*Harry A. Hanna,* for appellant.

*David E. Mack,* for appellee Garfield Heights.

*William A. Viscomi,* for appellee Mid–American Waste Systems of Ohio.

DONALD C. NUGENT, Judge.

This is an appeal from a final judgment of the Cuyahoga County Court of Common Pleas granting summary judgment to defendant-appellee, the city of Garfield Heights ("the city"), and third-party defendant-appellee, Mid–American Waste Systems of Ohio, Inc. ("Mid–American").

Plaintiff-appellant, BFI Waste Systems of Ohio, Inc., initiated the present action through the filing of its complaint for preliminary and permanent injunctive relief and declaratory judgment. Appellant named the city as defendant. In its complaint, appellant alleged that the city improperly accepted a bid submitted by Mid–American through the competitive bidding process for solid waste collection and disposal and curbside recycling services within the city. Appellant further alleged that the Mid–American bid made no provision for the collection of

yard waste and, therefore, was not responsive. Appellant contended that its bid was the lowest responsive bid. Appellant demanded (1) judgment declaring the Mid–American bid to be illegal and invalid and null and void, (2) judgment declaring the Mid–American bid unresponsive, invalid and contrary to law, (3) a preliminary and permanent injunction enjoining performance of the contract between the city and Mid–American; (4) judgment declaring appellant's bid to be the lowest and best responsive bid, and (5) judgment awarding appellant the contract as the lowest responsible bidder.

Soon after, Mid–American moved to intervene as a party defendant in the action pursuant to Civ.R. 24(A). The trial court granted Mid–American's motion to intervene. The record before this court does not contain an answer from either party.

On March 4, 1992, the city and Mid–American filed a joint motion for summary judgment.

Thereafter, on March 26, 1992, appellant moved the trial court to compel Mid–American to produce various documents relating to preparation and analysis of its bid. Mid–American opposed production of these documents, claiming them to be trade secrets. The trial court overruled appellant's motion to compel production of documents on May 20, 1992.

On June 23, 1992, appellant filed its own motion for summary judgment. The city and Mid–American filed a joint reply brief in support of their motion for summary judgment and an opposition brief to appellant's motion for summary judgment. In return, appellant filed a reply brief.

Finally, on September 9, 1992, appellant filed a motion to compel James Bowman, the General Manager of Mid–American, to answer a question propounded to him during his deposition concerning negotiations in which Mid–American was allegedly engaged with operators of a "Class I" composting facility. The trial court never ruled on appellant's motion to compel. Instead, the trial court granted the defendants summary judgment.

The facts relevant to this appeal are as follows:

On November 11, 1991, the Garfield Heights City Council passed a resolution authorizing the city Service Director to solicit bids for the collection, disposal and recycling of solid waste and recyclable materials generated within the city. Pursuant to that resolution, the city's Service Director, Charles Goedecke, published a public notice in a newspaper of general circulation inviting such bids.

The city invited bids in alternative forms and for varying periods of time. The invitation to bid expressly reserved to the city the right to waive defects or irregularities in the bids presented. The invitation required all bidders to submit bids for the curbside collection of residential refuse generated at residential units

within the city. It is undisputed that yard waste is included within the definition of residential refuse.

Appellant and Mid–American both submitted bids to the city. Both appellant and Mid–American submitted base bids for three years, with a two-year option and an alternate bid of five years with a two-year option. Each offered to collect residential refuse in several different ways, and each proposal was at a different cost.

The bids submitted by these companies and their total five-year costs were as follows:

| Bid | 5–Year Cost |
|---|---|
| 1. Appellant's Base Bid | $7,504,539.80 |
| 2. Appellant's Alternate (Blue Bag) Bid | $7,225,614.72 |
| 3. Mid–American Base Bid | $6,764,264.64 |
| 4. Mid–American Alternate (Blue Bag) Bid | $5,983,447.68 |

Charles Goedecke, the city's Service Director, reviewed and examined the bids received by the city in the fall of 1991. As Service Director, Goedecke is also a member of the Board of Control of the city. Goedecke averred that the Mid–American "NRT" system bid was unanimously approved by the Board of Control at a meeting held on December 30, 1991. Other members of the Board of Control were Mayor Thomas Longo, Director of Finance Richard Obert, Law Director David Mack and Councilpersons Rose Lovano, Nancy Marcinic and Joseph Suster.

Service Director Goedecke, Mayor Longo and Council President Michael Abella each averred that the "NRT" bid was accepted by the Board of Control because it was the lowest bid in terms of price and the best bid in terms of accomplishing waste collection. Each affiant explained that Mid–American's "NRT" system involves the rear-end separation of recyclables and waste, which promotes greater participation among households of the city.

Further, Mayor Longo and Service Director Goedecke each averred that the "NRT" bid encompassed the collection of all recyclables and solid waste, including yard waste. Finally, James A. Bowman, the General Manager of Redlin Rubbish Removal Company, a wholly owned subsidiary of Mid–American, explained that Mid–American's alternate "NRT" bid does include the collection and separation of all yard waste as defined in the city's bid specifications. According to Bowman, all separation of recyclable materials and yard waste is done at the NRT Waste Recycling Facility.

It is undisputed that as of December 1, 1993, during the term of the contract, "yard waste," defined as "solid waste that includes only leaves, grass clippings, brush, garden waste, tree limbs, holiday trees, tree trimmings, and/or prunings," see Ohio Adm.Code 3745–27–01(TTT), will be required to be separately disposed of from other waste, which can still be disposed of in sanitary landfills. "Contaminated yard waste" (that which is not source-separated) may only be accepted at a Class I composting facility. Ohio Adm.Code 3745–29–02. Furthermore, according to Christopher D. Knopf, an attorney representing appellant in the instant action, there are no Class I composting facilities operating in the state of Ohio. Knopf also averred that the state of Ohio had not issued a permit for a Class I composting facility as of August 26 and 27, 1992. Knopf further averred that the length of time required for the permit process and the opening of a Class I facility is too long for such a facility to be permitted and opened by December 1, 1993.

It was appellant's chief contention in its motion for summary judgment that Mid–American's "NRT" alternate bid did not provide for the handling and recycling of yard waste. Appellant contended that Mid–American's failure to provide for the disposal and recycling of yard waste in its "NRT" alternate bid gave Mid–American a competitive advantage in submitting an artificially low bid. Appellant contends the "NRT" alternate bid was not reflective of the true costs to properly collect and recycle all of the city's solid waste as required by law and, therefore, was nonresponsive to the city's invitation and specifications to bidders.

Mid–American's bid submission contained a bid for both a "bin" system (wherein the resident separates his or her own recyclable materials, which are separately handled by the hauler) and for the "NRT" system. As part of Mid–American's bid submission, Mid–American was required to submit a "Payback Report" detailing the amount of cash or credit to be given the city due to the reduction of refuse from the city's waste stream, the elimination of yard waste and any other items mandated to be removed from the waste stream as required by House Bill No. 592.

Although Mid–American submitted two bids, only one "Payback Report" page was submitted. Appellant contends that it is not clear from the face of the single "Payback Report" in which bid it was intended to be included. The "Payback Report" contains the following pertinent language:

" * * * [A]t this time we have anticipated the elimination of yard waste from the waste stream as mandated by House Bill 592. * * *

" * * *

"At such time when yard waste is eliminated from the normal waste stream if Garfield Heights chooses to have a pick-up program put into effect, an additional charge can be negotiated between the parties."

Bowman, in his deposition, testified that the "Payback Report" did not apply to the "NRT" alternate bid. Bowman maintained that Mid–American's bid under the "NRT" system included the separate disposal of contaminated yard waste after December 1, 1993 at no additional cost to the city. Bowman further claimed that, at the time of his deposition, Mid–American was negotiating with a Class I composting facility for the disposal of the contaminated yard waste.

Based on the foregoing, the trial court granted summary judgment to the city and Mid–American and overruled appellant's motion for summary judgment. Appellant timely appeals, raising the following assignments of error for our review:

"I. The trial court erred in granting summary judgment to defendants, as there existed a genuine issue of material fact upon which reasonable minds could differ as to the issue of whether Mid–American's bid had a provision for the disposal of yard waste at the time it was submitted.

"II. Even assuming for the sake of argument that there was no dispute of material fact, the trial court erred in overruling plaintiff's motion for summary judgment, as plaintiff had clearly shown that defendant, Mid–American's bid was not responsive to the invitation to bid issued by defendant the city of Garfield Heights.

"III. The trial court erred in granting defendants' motion for summary judgment when a motion to compel discovery was pending.

"IV. The trial court erred in denying plaintiff's discovery motions."

## I

Appellant's first and second assignments of error each challenge the trial court's decision to grant the city and Mid–American summary judgment and will, therefore, be considered jointly. Appellant first contends that there exists a genuine issue of material fact as to whether Mid–American's alternate "NRT" bid had a provision for the disposal of yard waste. Absent such provision, appellant argues, the "NRT" bid cannot be considered the lowest and best bid. Alternatively, appellant contends that Mid–American's "NRT" bid was not a responsive bid. As a result, appellant argues the city abused its discretion and had no authority to consider it.

A court reviewing the granting of a summary judgment must follow the standard set forth in Civ.R. 56(C). *Stegawski v. Cleveland Anesthesia Group,*

*Inc.* (1987), 37 Ohio App.3d 78, 523 N.E.2d 902; *Petrey v. Simon* (1984), 19 Ohio App.3d 285, 19 OBR 456, 484 N.E.2d 257, paragraph one of the syllabus. Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that:

" * * * (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 274.

The key to a summary judgment is that there must be no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2509, 2510, 91 L.Ed.2d 202, 210–211; *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123. Therefore, in determining whether a genuine issue of material fact remains to be litigated, we must turn our attention to the substantive law of the claims being litigated.

In the case *sub judice*, appellant challenges the propriety of the city's decision to award Mid–American the contract for solid waste collection, disposal and curbside recycling services within the city. The city's decision to award the instant contract to Mid–American is subject to Ohio's competitive bidding laws. R.C. 735.05; *Altschul v. Springfield* (1933), 48 Ohio App. 356, 1 O.O. 522, 193 N.E. 788; see, also, R.C. 9.312.

The statutory framework within which a state municipality is permitted to seek competitive bids is found in various chapters of the Revised Code. R.C. 735.05 authorizes a municipality's legislature to direct and authorize the city's director of public service to enter any written contract with the "lowest and best bidder" for the purchase of supplies or material or provide labor for any work exceeding $10,000. The director must first advertise for such bidders for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city. *Id.* R.C. 9.312 authorizes political subdivisions of the state to specifically adopt policies through ordinance or resolution requiring that each competitively bid contract it awards be awarded to the "lowest responsive and responsible bidder." R.C. 9.312(C).

The intent of competitive bidding is " 'to provide for open and honest competition in bidding for public contracts and to save the public harmless, as well as bidders themselves, from any kind of favoritism or fraud in its varied forms.' " *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 21, 552 N.E.2d 202,

204, quoting *Chillicothe Bd. of Edn. v. Sever-Williams Co.* (1970), 22 Ohio St.2d 107, 115, 51 O.O.2d 173, 177, 258 N.E.2d 605, 610.

■ The standard of review for trial courts in determining whether a city has appropriately awarded a competitive bidder a contract is whether the city abused its discretion. The Supreme Court, in *Cedar Bay, supra,* 50 Ohio St.3d at 21, 552 N.E.2d at 204, explained:

"Generally, courts in this state should be reluctant to substitute their judgment for that of city officials in determining which party is the 'lowest and best bidder.' 'The rule is generally accepted that, in the absence of evidence to the contrary, public officers, administrative officers and public boards, within the limits of the jurisdiction conferred by law, will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. All legal intendments are in favor of the administrative action.' "

R.C. 735.05 "places in the hands of city authorities the discretion of determining who under all the circumstances is the *lowest and best* bidder for the work in question." (Emphasis added.) *Id.* at 21, 552 N.E.2d at 205. "The meaning of the term 'abuse of discretion' * * * connotes more than an error of law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude." *Cedar Bay, supra,* 50 Ohio St.3d at 22, 552 N.E.2d at 205; *Steiner v. Custer* (1940), 137 Ohio St. 448, 19 O.O. 148, 31 N.E.2d 855, paragraph two of the syllabus; see, also, *State ex rel. Executone of Northwest Ohio, Inc. v. Commrs. of Lucas Cty.* (1984), 12 Ohio St.3d 60, 12 OBR 51, 465 N.E.2d 416; *State ex rel. Kavalec v. Parma* (July 14, 1988), Cuyahoga App. No. 53829, unreported, 1988 WL 85934.

■ Appellant first contends that a genuine issue of material fact exists as to whether Mid-American's alternate "NRT" bid contained a provision for the collection and disposal of yard waste. Absent such provision, appellant contends that Mid-American's bid cannot be considered the lowest and best bid. Appellant argues that the "Payback Report" attached to Mid-American's bid demonstrates that no provision in the "NRT" alternate bid is made for the collection of yard waste. The "Payback Report" provides, in pertinent part, that "[a]t such time when yard waste is eliminated from the normal waste stream if Garfield Heights chooses to have a pick up program put into effect, an additional charge can be negotiated between the parties."

In response, the city and Mid-American argue that the "Payback Report" does not apply to Mid-American's "NRT" alternate bid. Bowman testified at deposition that the "Payback Report" did not apply to the "NRT" alternate bid and that the "NRT" alternate bid did not contain a "Payback Report." Bowman further maintained in affidavit that the "NRT" bid included the separate disposal of

contaminated yard waste after December 1, 1993 at no additional cost to the city. Moreover, Service Director Goedecke, Mayor Longo, and Councilperson Abella each averred that the "NRT" bid was accepted by the city because it was the lowest bid in terms of price and best bid in terms of accomplishing waste collection. Service Director Goedecke and Mayor Longo additionally averred that the "NRT" bid encompassed the collection of all recyclables and solid waste, including yard waste.

Finally, the city and Mid–American rely on that portion of Mid–American's bid which explained the "NRT System—Alternate Bid" as follows:

"Redlin Rubbish Removal can provide the city of Garfield Heights with a total solid waste collection and recycling program. A single truck will service the solid waste and recyclable materials and then separate them at Redlin's new state of the art recycling facility. A recycling bin is not necessary to implement this program. The solid waste and recyclable materials will be collected and put through a series of automated and manual sorting systems."

Bowman reiterated in his affidavit that "a total solid waste collection and recycling program" included "the pick up, handling and disposal of *all* yard waste as required by House Bill 592."

A thorough review of the record leads this court to conclude that the trial court did not err in finding that the city acted within its discretion in accepting the "NRT" bid. While, on its face, it is not clear whether the "Payback Report" applies to the "NRT" bid, the evidentiary materials attached to the joint motion for summary judgment leave no doubt that the "NRT" system includes the pick-up, handling and disposal of the city's yard waste.

In *Cedar Bay, supra,* the Supreme Court held that a city does not abuse its discretion under R.C. 735.05 by holding a meeting, prior to awarding a contract, in order to confirm that a contractor's proposal meets the contract requirements, especially since none of the terms of the bid is changed or modified. Compare *Dayton ex rel. Scandrick v. McGee* (1981), 67 Ohio St.2d 356, 21 O.O.3d 225, 423 N.E.2d 1095, where the Supreme Court determined that the city's use of an unannounced residency criterion in determining which bid was the "lowest and best" constituted an abuse of discretion. In the present case, the record reflects that the city and Mid–American understood that the "NRT" bid encompassed the collection of all recyclables and solid waste, including yard waste. There is nothing in the record to suggest that the city abused its discretion in determining, prior to awarding the contract, that the disposal of yard waste was included in the "NRT" system. Nor is there evidence in the record to suggest that the city relied on unannounced criteria in awarding the contract to Mid–American. Finally, Bowman testified that the "Payback Report" did not apply to the "NRT" system. His testimony remains unrefuted.

Appellant argues, in the alternative, that the city erred and abused its discretion in awarding the contract to Mid–American on an unresponsive and incomplete bid. Appellant first argues that the "NRT" bid was nonresponsive because it did not contain any provision for the pickup and disposal of yard waste. Appellant next argues that the lack of a "Payback Report" in the "NRT" bid renders such bid nonresponsive.

■ It has been noted that "[b]ids for public contracts must conform in all material·respects to the contract specifications. Not every deviation from the specifications will, however, constitute a deviation that renders the bid nonresponsive. So long as a bid complies with the specifications in all material respects, and contains no irregularities which give one bidder a competitive advantage over others, the bid will be deemed responsive, notwithstanding the omission of an item called for by the specifications." *Kokosing Constr. Co. v. Dixon* (1991), 72 Ohio App.3d 320, 328, 594 N.E.2d 675, 680, citing *Leaseway Distrib. Centers, Inc. v. Ohio Dept. of Adm. Serv.* (1988), 49 Ohio App.3d 99, 550 N.E.2d 955. Thus, for a bid to be deemed nonresponsive, the deviation must be substantial and must provide the bidder an advantage over his competitors. *Kokosing, supra; Wilson Bennett, Inc. v. Greater Cleveland Regional Transit Auth.* (1990), 67 Ohio App.3d 812, 819, 588 N.E.2d 920, 924; *Natl. Eng. & Contr. Co. v. Cleveland* (C.P.1937), 76 Ohio Law Abs. 303, 146 N.E.2d 340.

A review of the record herein leads this court to conclude that the trial court did not err in ruling that the city acted within its discretion in determining that Mid–American's "NRT" bid was responsive. As previously concluded, there exists no genuine issue of material fact concerning whether the "NRT" bid includes a provision for the pickup and disposal of yard waste. The record is clear that the "NRT" system does provide for the pickup and disposal of yard waste.

■ Additionally, this court concludes that the omission of a "Payback Report" from the "NRT" bid is not so substantial and does not give Mid–American a competitive advantage so as to render its bid nonresponsive. First, the city's invitation to bidders expressly reserved to the city the right to waive defects and irregularities in the bids. Such provisions in an invitation to bid are given legal effect where such waiver works no prejudice to the rights of the other bidders or to the public. See *Wilson Bennett, supra,* 67 Ohio App.3d at 819, 588 N.E.2d at 924; and *Cedar Bay, supra,* 50 Ohio St.3d at 23, 552 N.E.2d at 206. In the present case, this court can perceive of no prejudice to appellant or the public from the omission of a "Payback Report" in Mid–American's "NRT" bid.

Additionally, we do not believe and appellant does not argue that other bidders were placed at a competitive disadvantage from the omission of such report in Mid–American's bid. The record reveals that Mid–American's bid will save the

city approximately $250,000 each year over the five-year contract period when compared to appellant's lowest bid. Additionally, appellant's bid did contain a "Payback Report" wherein it asserted that no cash or credit would be forthcoming in the event that the city's solid waste stream was reduced as required by law. The omission of a "Payback Report" from Mid–American's bid has the same effect on its bid as does appellant's "Payback Report" on appellant's bid. In each case, the city was offered no cash or credit for reduction in the city's solid waste. Additionally, had a "Payback Report" been included in the "NRT" bid offering cash or credit, as requested by the city, the effect would be to make Mid–American's "NRT" bid more competitive than appellant's. Appellant's bid, therefore, would be rendered less competitive by the inclusion of a "Payback Report" in the "NRT" bid, and in no event would the inclusion of such report make appellant's bid more competitive.

Finally, we believe appellant's reliance on R.C. 9.312 is misplaced. Appellant argues that R.C. 9.312 requires that a public authority only consider those bids which are responsive. Pursuant to the statute, appellant claims the city has no discretion to consider a nonresponsive bid. R.C. 9.312. authorizes, but does not require, municipalities to adopt a policy by ordinance or resolution requiring each competitively bid contact it awards to be awarded to the lowest responsive and responsible bidder. R.C. 9.312(C); *Kokosing Constr. Co., supra,* 72 Ohio App.3d at 680, 594 N.E.2d at 680, at fn. 1. In the present case, there is no evidence in the record that the city had adopted a policy by ordinance or resolution requiring that each competitively bid contract be awarded to the lowest responsive and responsible bidder. Instead, the resolution authorizing competitive bids directs the city's service director to enter a contract with the "lowest and best bidder." Additionally, R.C. 9.312(A) provides that a responsive bid is one which responds to bid specifications in all material respects and contains no irregularities or deviations from the specifications which would affect the amount of the bid or otherwise give the bidder a competitive advantage. As this court has previously found, the city expressly reserved the right to waive defects and irregularities in the bids, and the omission of a "Payback Report" did not give Mid–American a competitive advantage over appellant.

We therefore conclude that the trial court did not err in granting the city and Mid–American summary judgment. The record before the court does not reveal a genuine issue of material fact regarding whether the city abused its discretion in awarding the contract in question to Mid–American.

Appellant's first and second assignments of error are, accordingly, overruled.

## II

Appellant's third and fourth assignments of error raise similar issues and will, also, be considered jointly. In appellant's third assignment of error, appellant

argues the trial court committed reversible error in granting appellees summary judgment when its motions to compel discovery were pending. In appellant's fourth assignment of error, appellant argues the trial court committed reversible error in not compelling appellees to produce documents and not compelling Mid–American's James Bowman to answer deposition questions.

Civ.R. 56(F) provides a litigant with the appropriate vehicle for seeking a continuance of a ruling on a summary judgment motion while the nonmoving party gathers necessary rebuttal evidence. Civ.R. 56(F) states:

"Should it appear from the affidavits of a party opposing the motion for summary judgment that he cannot for sufficient reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just."

■■ A trial court is free to consider a motion for summary judgment where no continuance is requested or when such continuance is not supported by affidavits which would suggest the need for further discovery. *Siegel v. D'Eramo* (1992), 80 Ohio App.3d 72, 608 N.E.2d 842; see, also, *Transamerica Financial Serv. v. Stiver* (1989), 61 Ohio App.3d 49, 572 N.E.2d 149. A party who fails to comply with the provisions of Civ.R. 56(F) waives any error in a trial court's premature ruling on a motion for summary judgment. *Benjamin v. Deffet Rentals* (1981), 66 Ohio St.2d 86, 20 O.O.3d 71, 419 N.E.2d 883; *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 87, 523 N.E.2d 902, 911.

■ The record before this court reveals that appellant failed to utilize Civ.R. 56(F) in order to seek a continuance on a ruling on appellees' joint motion for summary judgment. Instead, appellant filed a motion to compel production of Mid–American's bid computation and analysis documents pursuant to Civ.R. 37(A). Mid–American responded by questioning the relevance of such documents and by arguing that said documents were trade secrets. Appellant filed a reply brief instanter wherein it passingly argued that such documents were necessary to respond to Mid–American's summary judgment motion. Finally, appellant filed a motion to compel an answer to a deposition question propounded to James Bowman, once again relying on Civ.R. 37(A). The trial court overruled appellant's motion to compel production of documents and failed to rule on its motion to compel an answer to a deposition question prior to ruling on appellees' joint motion for summary judgment. Therefore, appellant has waived any error by the trial court in prematurely ruling on appellees' joint motion for summary judgment.

■ Even assuming that appellant has not waived error in the trial court's alleged premature decision to grant summary judgment, this court finds no error in the trial court's decision overruling appellant's motions to compel discovery. It is well established that the trial court has broad discretion in controlling the discovery process. *Stegawski, supra,* 37 Ohio App.3d at 85, 523 N.E.2d at 909; *State ex rel. Daggett v. Gessaman* (1973), 34 Ohio St.2d 55, 63 O.O.2d 88, 295 N.E.2d 659. A review of the record demonstrates that appellant failed to demonstrate a need for production of appellees' internal documents relating to their bid or for an answer to a deposition question concerning negotiations with the operator of a Class I composting facility. The ultimate issue before the trial court was whether the city abused its discretion in awarding the relevant contract to Mid–American. Because the evidentiary materials failed to raise a material issue of fact concerning whether Mid–American's "NRT" bid provided for the pickup and disposal of yard waste, appellant's need for discovery of Mid–American's internal proprietary documentation and information concerning its bid does not outweigh any hardship Mid–American may suffer as a result of having this proprietary information given to a competitor. *Stegawski, supra,* 37 Ohio App.3d at 85, 523 N.E.2d at 909. While appellant's request for such information is relevant to how Mid–American can perform the contract, it is not relevant to whether Mid–American's bid provided for the pickup and disposal of yard waste.

Appellant's third and fourth assignments of error are, therefore, overruled.

*Judgment affirmed.*

SPELLACY, P.J., and PORTER, J., concur.