OPINION
Plaintiffs-appellants Robert and Judy Essad (Essad) appeal the decision of the Mahoning County Common Pleas Court granting defendant-appellee Cincinnati Casualty Company (Cincinnati) summary judgment. This court is asked to determine if uninsured motorist (UM) coverage is available to Essad or whether Essad destroyed Cincinnati's subrogation rights by requesting a relief from an automatic stay that was issued by the bankruptcy court. For the reasons stated below, the decision of the trial court is hereby affirmed in part, reversed in part and remanded.
 STATEMENT OF FACTS
In February 1997, Essad was involved in a multiple car accident in Mercer County, Pennsylvania. The accident involved Essad, Charles Holland (Holland), a driver for Builders Transport, Inc. (BT), and James Kuhns (Kuhns), a driver for Landstar Inway fka Prism Trucking (Prism). BT was self-insured but had an excess insurance policy issued from Reliance Indemnity Company. Essad has a primary and UM/UIM insurance policy issued from Cincinnati.
The accident allegedly occurred because Holland, a driver for BT, made a sudden lane change in front of Essad causing him to veer the car to the right and slam on the brakes. Kuhns was driving a truck behind Essad. Kuhns was unable to stop and hit Essad from behind. Essad sustained injuries as a result of the accident.
BT became insolvent and filed for bankruptcy in June 1998. On December 21, 1998, Essad filed a case against Kuhns, Prism, and Holland in the U.S. District Court in Western Pennsylvania (Pennsylvania case). In the Pennsylvania case proceedings, Kuhns, Prism, and Holland filed a motion to dismiss for failure to join BT as a necessary party. By this time, BT had already filed for bankruptcy in the U.S. Bankruptcy court in Georgia. The bankruptcy court issued an automatic stay preventing the commencement of any further action against BT. The automatic stay prevented Essad from joining BT in the Pennsylvania case. Therefore, Essad asked the bankruptcy court for partial relief from the automatic stay. Relief would allow Essad to join BT to the Pennsylvania case. On May 28, 1999, the bankruptcy court granted Essad's request for partial relief from the stay.
On December 14, 1998, Essad filed a declaratory judgment action against Cincinnati in Mahoning County Common Pleas Court. Essad claimed they were entitled to UM coverage from Cincinnati. Cincinnati filed a third-party complaint against Prism and Kuhns. The trial court dismissed the third-party complaint. Essad and Cincinnati proceeded to file motions for summary judgment. The trial court granted summary judgment for Cincinnati. This timely appeal followed.
Essad raises two assignments of error on appeal, the first of which contends:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT CINCINNATI'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S CLAIM AND IN REINSTATING THAT SUMMARY JUDGMENT ORDER AFTER VACATING THE ORDER FOR FURTHER HEARING."
Essad sets forth four arguments under this assignment of error: 1) UM coverage is available; 2)Essad did not destroy Cincinnati's subrogation rights; 3) the trial court erred in failing to grant Essad's motion to compel discovery; and 4) the trial court erred in dismissing Essad's bad faith claim. Each will be addressed separately.
 AVAILABILITY OF UM COVERAGE
Essad argues UM/UIM coverage exists where an accident is caused by joint tortfeasors, one of which is insured and one that is uninsured. Cincinnati rebuts this argument by stating that no UM coverage is available in this situation because Essad failed to prove that BT was an uninsured owner or operator.
BT was a self-insured company with an excess insurance policy that would apply if the damages per accident exceeded one million dollars. Cincinnati claims that since BT is bankrupt, the excess insurance will "drop down" and act as first dollar coverage. This argument is unsupported and incorrect.
The excess insurance policy is not applicable unless the damages per accident are in excess of one million dollars. Liability of the excess insurer does not arise until the amount of loss or damage is in excess of the coverage provided by the primary insurance policy. Wurth v. IdealMut. Ins. Co. (1987), 34 Ohio App.3d 325. The language in the policy states "per accident." This means the damages resulting from the Essad accident must reach one million dollars before the excess insurance coverage will be available. Furthermore, the excess insurance policy does not "drop down" and act as the primary insurance policy when the primary insurer becomes insolvent. As a matter of public policy, "drop down" liability protection should not be judicially imposed on excess insurance providers. Id.; Value City, Inc. v. Integrity Ins. Co. (1986),30 Ohio App.3d 274 (excess carrier has no duty to defend if primary insurer becomes insolvent). However, an excess insurer may contract to act as the primary insurer if the primary insurer becomes insolvent. Id. In the case sub judice, the excess insurance policy contains no language to authorize drop down coverage. In the absence of a contractual provision to do so, the excess insurance policy will not drop down. Therefore, BT is uninsured.
Cincinnati further asserts that the language of the policy excludes UM claims until Prism's policy and the excess insurance policy are exhausted. Cincinnati's argument is based on the language in the policy stating that UM/UIM claims will not be available until the limits of liability under any bodily injury liability policy have been exhausted. Cincinnati's assertions are incorrect. As explained above, the excess policy is unattainable in this situation. As such, Essad cannot exhaust the policy limits of a policy that is not even applicable.
Furthermore, Prism's policy does not need to be exhausted before UM coverage is available. Prism is an insured and possible joint tortfeasor. The Ohio Supreme Court has twice stated that when an occupant of the car is injured in an accident with an uninsured automobile, his/her right of recovery under the contract is not eliminated by the presence of an insured automobile in the same accident. Motorists Mut.Ins. Co. v. Tomanski (1971), 27 Ohio St.2d 222; Watson v. Grange Mut.Cas. Co. (1988), 40 Ohio St.3d 195. While Cincinnati acknowledges that the above statement is the holding of the Supreme Court, they insist that the law is incorrect. Cincinnati's arguments are unpersuasive. The Supreme Court's holding is law by which this court is bound.
Cincinnati states that even if Tomanski and Watson are law, they are inapplicable to the current version of R.C. 3937.18. Cincinnati is correct that the statute that was enacted when the Tomanski and Watson
decisions were decided is now no longer in effect. The amendments made to R.C. 3937.18 were part of Senate Bill 20. The sections that follow the statute state that it was the intention of the General Assembly in amending R.C. 3937.18 to supercede the holding of the Supreme Court inSavoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. There is no mention of the Tomanski or Watson decisions. Furthermore, the Tomanski
holding was based upon the purpose of R.C. 3937.18 to protect persons insured who are legally entitled to recovery. R.C. 3937.18(A)(1). When the Tomanski decision was decided, R.C. 3937.18(A) read as follows:
"(1) Uninsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for bodily injury, sickness, or disease, including death under provisions approved by the superintendent of insurance, for the protection of insureds thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, suffered by any person insured under the policy."
The language in this part of the statute has not changed since the decision in Tomanski. A paragraph has been added after this section, but it does not affect the language or meaning of the section. Therefore,Tomanski is still good law. UM coverage is available to Essad as long as Cincinnati's subrogation rights were not destroyed.
 SUBROGATION
The legal doctrine of subrogation has long been recognized as an insurer's derivative right. Bogan v. Progressive Cas. Ins. Co. (1988),36 Ohio St.2d 22, 29. Subrogation clauses are valid and enforceable conditions precedent to the insurer's duty to provide underinsured motorist coverage. Bacon v. West Am. Ins. Co. (1996), 115 Ohio App.3d 433,435, citing Bogan, 36 Ohio St.2d at 22. An insured who settles with and releases an underinsured tortfeasor before giving his/her insurer notice is precluded from bringing an action against his/her insurer for underinsured motorist benefits. McDonald v. Republic-Franklin Ins. Co. (1989), 45 Ohio St.3d 27; Bogan, 36 Ohio St.2d at 30; Gibson v. StateFarm Mut. Auto. Ins. Co. (1997), 123 Ohio App.3d 216, 223.
Cincinnati's insurance policy required Essad to do whatever was necessary to allow Cincinnati to exercise their subrogation rights and nothing to prejudice those rights. In the order granting partial relief from the stay, the court stated that it is "unlikely that there will be any significant amount of money available to pay unsecured creditors." In reality, Essad may never be able to collect from BT. BT is insolvent and there appears to be a long list of creditors ahead of Essad in collecting. Despite the inability to collect, Essad cannot destroy Cincinnati's subrogation rights. Bacon, 115 Ohio App.3d at 435 (following the ruling in Bogan, but finding fault with the ruling in Bogan);Eilerman v. Colegate (1996), 115 Ohio App.3d 344 (following the ruling inBogan, but once again asking the Supreme Court to modify the ruling inBogan); Ferrando v. Auto-Owners Ins. Co. (Aug. 31, 2001), Ashtabula App. No. 2000-A-0038, unreported (discretionary appeal allowed Feb. 6, 2002, 2002 Ohio LEXIS 250).
We hold that the partial relief from the automatic stay did not release the tortfeasor, therefore, Essad did not destroy Cincinnati's subrogation rights. During bankruptcy, a stay is issued automatically by the court pursuant to 11 U.S.C. § 362. The stay prevents commencement of any further actions. In re Barker-Fowter Elec. Co. (W.D.Mich. 1992),141 B.R. 929, 932. The purpose of the automatic stay is to give the debtor a breathing spell from creditors by stopping all collection efforts, all harassments, and all foreclosure actions. Maritime ElectricCo. v. United Jersey Bank (C.A.3, 1991), 959 F.2d 1194, 1204; In reMeis-Nachtrab (N.D.Ohio. 1995), 190 B.R. 302, 306. This allows the debtor time to attempt to repay the debts, institute a plan of reorganization, or simply to be relieved of the financial pressures that drove the debtor into bankruptcy. Maritime, 959 F.2d at 1204; In re Meis-Nachtrab,190 B.R. at 306. The stay also protects the creditors as a class from the possibility that one creditor will obtain payment on its claim to the detriment of all other creditors. In re Meis-Nachtrab, 190 B.R. at 306.
However, during a stay, a creditor may request relief from the stay.11 U.S.C. § 362(d). In determining whether or not an automatic stay should be lifted to allow continuation of another court action, the bankruptcy courts have developed a balancing test, whereby the interests of the estate are weighed against the hardships that will be incurred by the creditor-plaintiff. In re Bock Laundry Machine Co. (Bankr.N.D.Ohio 1984), 37 B.R. 564, 566, citing In re Honosky (Bankr.S.D.W.VA. 1980); Inre Terry (Bankr.E.D.Wis. 1981), 12 B.R. 578; In re Rounseville (Bankr. R.I. 1982), 20 B.R. 892. The test is whether or not: 1) any "great prejudice" to either the bankruptcy estate or the debtor will result from continuation of the civil suit; 2) the hardship to the plaintiff by maintenance of the stay considerably outweighs the hardship to the debtor and 3) the creditor-plaintiff has a probability of prevailing on the merits of his case. In re Bock Laundry Machine Co., 37 B.R. at 566, citing Matter of McGraw (Bankr.W.D.Wis. 1982), 18 B.R. 140.
In the case at hand, Kuhns, Holland and Prism demanded that BT be added as a necessary party to the proceedings in the Pennsylvania case. Essad's complaint could have been dismissed if BT was not added. However, since the stay was issued, BT could not be added to the lawsuit since any action taken against a debtor for a cause of action arising pre-petition for bankruptcy would be void. In re Meis-Nachtrab, 190 B.R. at 306
(filing a cause of action knowing the stay was issued is contemptuous conduct). If Essad did not request the relief from stay, the two year statute of limitations would have run and destroyed their cause of action against Kuhns, Holland and Prism. The only way a creditor can proceed with a cause of action during the bankruptcy proceedings is to request relief from the automatic stay. Therefore, Essad would have been prejudiced if the relief was not granted.
When issuing a relief from a stay, the bankruptcy court may issue a partial, modified or full relief. A full relief would allow a creditor to pursue a claim against the debtor in another court and allow the debtor to immediately collect on that judgment. In re Bock Laundry Machine Co.,37 B.R. at 566. A modified or partial relief is issued by the bankruptcy court to fashion a relief that protects the interests enumerated in In reBock Laundry Machine Co. See Id.
The bankruptcy court modified the automatic stay. The bankruptcy court's order for partial relief from the automatic stay stated:
"For this reason, cause exists to modify the automatic stay to permit the above Movants to pursue their claims against the Debtors in other courts and to collect any judgment so obtained from any insurance policy available to a such claims. Co-defendants with the Debtors in those suits, if any, should likewise be free to cross-claim or counterclaim against the Debtors so that all aspects of the liability of the Debtorsand damages can be determined." (Emphasis added).
The purpose of the above partial relief order is to determine the liability of the debtor. See In re Bock Laundry Machine Co.,37 B.R. at 566 (stating that the stay allows the movants to proceed against assets of the estate without any regard for the claims of other creditors, however, the movants will not be permitted to make any effort to collect on any judgment obtained in their personal injury actions, instead the movant is to file with the bankruptcy court a proof of claim form for the amount of that judgment); Rosh v. Cave Imaging Sys., Inc. (1994), 26 Cal.Rptr.2d 136 (holding that the partial relief lifted the automatic stay and allowed the state court to conduct a jury trial; however, the partial relief limited recovery to available insurance proceeds, and allowed the plaintiffs to file claims in bankruptcy proceedings to permit the creditor to obtain any money that is available from the bankruptcy estate to satisfy the judgment against the debtor that is not covered by insurance).
Cincinnati interprets the last two sentences of the order to state that if Essad obtains a judgment in the Pennsylvania case against BT, Essad will not be allowed to enforce that judgment against BT's bankruptcy estate, thereby destroying Cincinnati's subrogation rights. Cincinnati's interpretation is incorrect. The aforementioned sentences of the order granting the partial relief from the automatic stay state:
"The automatic stay is modified to permit each Movant to prosecute in any court or other forum any personal injury tort or wrongful death claim and any related claim against any Debtor and to permit any other defendant sued by a Movant in any such litigation having a cross-claim or counterclaim against any Debtor arising out of or related to the same incident or incidents to prosecute such cross-claim or counterclaim. Each such entity obtaining a judgment against any Debtor may seek to enforce that judgment against any insurance company to the extent coverage is available under any insurance policy issued to or covering the liability of the Debtor against which the judgment is obtained, provided, however, that no creditor holding a judgment so obtained shall execute that judgment against any asset of the Debtors' bankruptcy estate."
While the order states that the judgment cannot be "executed" against any asset of the debtor's bankruptcy estate, that language is used to reinforce the meaning that this order is a partial relief from the stay, not a full relief from the stay. If Essad obtains a judgment against BT/debtor, they may file an amended proof of claim form with the bankruptcy court. Bank.R. 3003(c)(3) (stating a court shall fix or for cause shown may extend the time within which proofs of claim may be filed, additionally allowing extensions under Bank.R. 3002(c)); Bank.R. 3002(c) (allowing proof of claims forms to be filed within thirty days after the judgment becomes final for unsecured claims). Therefore, if there are any assets left in the bankruptcy estate after secured creditors are paid, Essad may collect from BT. As such, the partial relief did not release BT. Therefore, Essad did not destroy Cincinnati's subrogation rights.
 MOTION TO COMPEL DISCOVERY
The motion to compel discovery was filed on June 20, 2000. On August 16, 2000, the court sustained Cincinnati's motion for summary judgment, overruled Essad's partial summary judgment, but never ruled on the motion to compel. The failure to rule on a motion generally is treated as if the court overruled it. State ex rel. Cassels v. Dayton City Sch. Dist. Bd.of Edn. (1994), 69 Ohio St.3d 217, 223. It is well established that the trial court has broad discretion in controlling the discovery process.Stegawski v. Cleveland Anethesia Group, Inc. (1987), 37 Ohio App.3d 78,85; State ex rel. Daggett v. Gessaman (1973), 34 Ohio St.2d 55.
The record before this court reveals that Essad failed to utilize Civ.R. 56(F) in order to seek a continuance on a ruling of Cincinnati's motion for summary judgment. Instead, Essad filed a motion to compel discovery pursuant to Civ.R. 37(A). The trial court failed to rule on the motion but instead issued a judgment as to the summary judgment motion. Therefore, Essad has waived any error by the trial court in prematurely ruling on the motion for summary judgment. BFI Waste Sys. of Ohio v.Garfield Hts. (1994), 94 Ohio App.3d 62, 74 (holding that appellant waived his right to order compelling discovery because appellant filed a motion to compel rather than a request for a continuance in accordance with Civ.R. 56(F)). As such this issue is without merit.
 BAD FAITH CLAIM
The Ohio Supreme Court has held that a cause of action for the tort of bad faith based upon an alleged failure of an insurance company to satisfy a claim by its insured may be brought by its insured as a separate action, apart from an insured's action alleging breach of the insurance contract. Motorists Mut. Ins. Co. v. Said (1992),63 Ohio St.3d 690, overruled to the extent that the decision is inconsistent with the ruling in Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, syllabus (holding that actual intent as laid out bySaid is not an element of a bad faith claim, rather the standard is reasonable justification). The Second District Court of Appeals has held that a cause of action for the tort of bad faith may exist irrespective of any liability arising from a breach of contract. Bullet Trucking,Inc. v. Glen Falls Ins. Co. (1992), 84 Ohio App.3d 327, 333. Therefore, bad faith claims can be independent claims. Id.
It is true that most of the time bad faith claims and breach of contract claims will be asserted together and the basis for both claims is the refusal to pay. Id. However, this is not always the situation. A bad faith cause of action arises when "an insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." Zoppo, 71 Ohio St.3d at syllabus. In a previous case by the Supreme Court, it laid out two types of bad faith claims by stating, "A cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal." Said, 63 Ohio St.3d at 690, citing Hoskins v. Aetna LifeIns. Co. (1983), 6 Ohio St.3d 272, overruled to the extent that the decision is inconsistent with the Zoppo decision which stated that reasonable justification was the standard used in a bad faith claim, rather than actual knowledge. In the Zoppo decision, the Supreme Court was merely clarifying the standard used to determine if bad faith occurred, it was not changing the determination that there are two types of bad faith claims. Therefore, the language in the two types that require actual knowledge and intentional failure, instead requires reasonable justification. See Zoppo, 71 Ohio St.3d at 552.
In the complaint, Essad appears to claim both types of bad faith. The complaint states that Cincinnati failed to "properly investigate, process and pay" Essad's claims.
In the first type of bad faith claim, plaintiff must prove that the insurer had no lawful basis to deny coverage. Bullet Trucking,84 Ohio App.3d at 333. By proving this, plaintiff is proving his contract claim.Id. Therefore, in the first type of bad faith claim, the success of the tort claim hinges on the success of the contract claim.
However, the second type of bad faith claim is not as dependent on the contract claim. Id. In the second type of claim, the insured need only establish that the insurer had no reasonable justification to fail to determine whether its refusal had a lawful basis. See Zoppo,71 Ohio St.3d at 552; Said, 63 Ohio St.3d at 690. Therefore, it is possible that the insured would be unable to prove the insurance company's refusal to pay on the claim was unlawful, but still be able to prove that insurer failed to determine whether the refusal had a lawful basis.
Regardless of the above analysis, the fact remains that neither party requested summary judgment on the bad faith claims. Since this court finds that Essad did not destroy Cincinnati's subrogation rights, i.e. the contract claim did not fail, summary judgment was improper as to both bad faith claims. See Marshall v. Aaron (1984), 15 Ohio St.3d 48, 51
(holding that a trial court cannot sua sponte rule on summary judgment). As such the first assignment of error is reversed as to the subrogation issue and the bad faith claims issues, however, it is affirmed as to the trial court's ruling on the motion to compel.
 ASSIGNMENT OF ERROR NO. TWO
Essad's second assignment of error provides:
 "THE COURT BELOW ERRED IN FAILING TO GRANT THE ESSADS' SUMMARY JUDGMENT MOTION ON THE ISSUE OF LIABILITY."
The trial court improperly granted summary judgment as to the contract claims, however, the trial court properly denied Essad's motion for summary judgment on liability. There are two possible tortfeasors in this case, Holland/BT and Kuhns/Prism. Holland was the driver for BT and Kuhns was the driver from Prism. Whether or not Cincinnati is liable for UM coverage depends on whether BT is liable. Genuine issue as to material fact exists as to this issue. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66. That issue is being litigated in the Pennsylvania case. The trial court properly denied summary judgment; the Pennsylvania court is in the best position to determine the liability of Holland/BT and Kuhns/Prism.
For the above stated reasons, the decision of the trial court is hereby affirmed in part, reversed in part and remanded. Essad did not destroy Cincinnati's subrogation rights. However, the trial court was correct in denying Essad's motion for partial summary judgment.
Donofrio, J., and Waite, J., concurs.