**BULLET TRUCKING, INC., Appellant,**

v.

**GLEN FALLS INSURANCE COMPANY, Appellee.**

[Cite as *Bullet Trucking, Inc. v. Glen Falls Ins. Co.* (1992), 84 Ohio App.3d 327.]

Court of Appeals of Ohio,
Montgomery County.

No. 13462.

Decided Dec. 16, 1992.

328

*Randolph J. Bernard,* for appellant.

*Kenneth B. Flacks,* for appellee.

---

WOLFF, Judge.

Bullet Trucking, Inc. appeals from a summary judgment rendered in favor of Glen Falls Insurance Company.

The facts of this case are as follows.

On March 14, 1989, Bullet became a consignee of approximately five hundred sixty-six pneumatic rubber tires worth approximately $30,886. At some point that day, after being loaded onto the tractor-trailer on which they were to be carried, the tires were stolen.

Bullet immediately contacted Glen Falls, its motor truck cargo insurance carrier, to file a claim for reimbursement of the loss.

On May 5, 1989, Glen Falls sent a letter advising Bullet that the claim arising out of the cargo theft had been denied. On June 2, 1989, an officer of Bullet, on behalf of the company, sent a letter objecting to the denial of coverage. In response, Glen Falls sent a letter dated June 14, 1989, which stated that the company's position remained unchanged and that the claim therefore remained denied.

No further exchanges were made between the two companies. However, in February 1991, Bullet, unable to locate its original copy of the Glen Falls insurance policy, contacted its independent insurance agent and requested that a copy be sent. Bullet received the requested copy on February 19, 1991, and immediately forwarded it along with other documents relating to the theft of the tires to its counsel.

On May 1, 1991, Bullet filed a complaint alleging that in refusing to provide coverage for the tire loss, the insurance company breached both its contract with Bullet and its duty of good faith. Through inadvertence, Bullet's complaint improperly named Continental Insurance Company as the defendant. Continental filed an answer which denied the existence of an insurance contract between its company and Bullet and alleged that the policy attached to the complaint was not a complete copy as required by Civ.R. 10(B).

On November 15, 1991, Bullet filed an amended complaint substituting Glen Falls as the correct party defendant and asserting that the copy of the insurance policy attached to the complaint was the copy sent by the insurance agent.

On February 26, 1992, Glen Falls moved for summary judgment on the grounds that the lawsuit was not commenced within the two-year limitations

period designated in the insurance contract. The trial court granted this motion and entered judgment in favor of Glen Falls.

■ Bullet appeals from this judgment and asserts two assignments of error:

"I. The trial court improperly sustained appellee's motion for summary judgment since pursuant to the doctrine of equitable estoppel appellee should not have been permitted to benefit from the two-year period of limitations contained in the insurance policy."

The policy clause relevant to the determination of this assignment of error is as follows:

"No one may bring a legal action against us * * * unless:

"1. There has been full compliance with all the terms of this [policy];

"2. The action is brought within 2 years after you have knowledge of the 'loss.' "

In its brief, Bullet concedes that Ohio courts have generally recognized the validity and enforceability of insurance policy clauses which designate the applicable statute of limitations for actions brought under the policy. See *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311. Bullet further acknowledges that the two-year limitations clause contained in the Glen Falls policy is, in and of itself, a valid and enforceable clause which would bar as untimely the action filed in this case. However, Bullet contends that the two-year limitations clause does not bar this action because the clause was rendered unenforceable by the doctrine of equitable estoppel when the insurance company failed to provide Bullet with a complete copy of the insurance policy as it was requested to do.

In support of this contention, Bullet relies on the Supreme Court of Ohio's opinion in *Hounshell* and this court's opinion in *Bray v. Westfield Ins. Co.* (Mar. 16, 1987), Montgomery App.No. 10097, unreported, 1987 WL 8026. In *Hounshell*, the Supreme Court examined the issue of insurance policy limitation clauses and held that although such clauses are generally valid and enforceable, an insurance company's right to assert such clauses can be lost by waiver and estoppel. The court found that such waiver or estoppel may occur "when the insurer, by its acts or declarations, [1] evidences a recognition of liability under the policy, and [2] the evidence reasonably shows that such expressed recognition of liability and offers of settlement have led the insured to delay in bringing an action on the insurance contract." *Id.*, 67 Ohio St.2d at 431, 21 O.O.3d at 270, 424 N.E.2d at 313.

In *Bray*, this court applied the principles of *Hounshell* to a case which bears some factual similarity to this case. In *Bray*, the insured, a homeowner, claimed

that the insurance company was estopped from asserting the one-year limitations clause contained in the insurance policy because the insurance company prevented him from discovering the limitations clause. Specifically, the homeowner filed an affidavit stating that his copy of the insurance policy had been destroyed in the fire which destroyed his home, and that although he had asked the insurance company to provide him with a copy of the policy, and had been promised that one would be sent, he did not receive a copy until *after* the limitations period had expired.

In determining whether the insurance company's failure to timely provide the homeowner with a copy of his insurance policy constituted estoppel or waiver, we applied the two-pronged test of *Hounshell*. In so doing, we held that the first prong of the test had been established by the insurance company's payment of the homeowner's initial claim. We likewise determined that the second prong had been satisfied because, although the homeowner was not led to delay filing suit by expressed recognition of liability and settlement offers, he was nonetheless led to delay by the insurance company's failure to more promptly provide the copy of the policy as requested. We quoted a treatise that states that "an insurer clearly may be estopped from relying on a provision of its policy requiring an action therein to be commenced within 12 months after inception of the loss when the insurer wrongfully or unjustifiably withholds the policy from the insured." 20A Appleman, Insurance Law and Practice (1980) 518, Section 11637. Thus, we held that that particular failure to provide the insured with a copy of the policy satisfied the second prong of the *Hounshell* test.

In arguing that we must apply *Bray* to this case and hold that the insurance company's failure to provide Bullet with a complete copy of the insurance policy estops Glen Falls from asserting the limitations clause as a defense, Bullet, in essence, urges us not only to apply our expanded version of the second prong of the *Hounshell* test, but to expand the first prong of that test to include cases in which liability was in no way acknowledged by the insurance company. The principles of equitable estoppel do not warrant such an expansion of the first prong of *Hounshell*. The facts of this case do not fall within the second *Hounshell* prong, as expanded in *Bray*.

The facts of this case are straightforward. Bullet filed a claim with Glen Falls for coverage of the tire loss. Glen Falls considered Bullet's claim for coverage and, within eight weeks, denied the claim by letter. Bullet objected to this denial of coverage and sent a letter to that effect to Glen Falls. Glen Falls then sent a second letter to Bullet, three months after the loss, indicating that the decision to deny coverage remained unchanged. Thus, Bullet cannot claim that Glen Falls evidenced any recognition of liability. Hence, Bullet cannot establish the first prong of the *Hounshell* test.

Moreover, Bullet cannot satisfy even *Bray*'s expanded version of the second prong of the *Hounshell* test. As we noted above, the facts of this case bear some similarity to those in *Bray*. However, there is an important factual distinction between these cases. Unlike the homeowner in *Bray*, Bullet presented no evidence to support its contention that Glen Falls' failure to provide a complete copy of the insurance policy caused it to delay bringing its action on the insurance contract until after the limitations period had expired. Although Bullet contended in its memorandum opposing the motion for summary judgment that had the copy it received on February 19, 1991 contained the limitations clause, it could have filed the action in time, no supporting evidence was presented that tended to prove this contention. Both of the supporting affidavits filed by Bullet, one affidavit being that of Bullet's legal counsel, stated that the policy received was not complete and that no complete policy was received until after the filing of the complaint, but neither affiant attributed the delay in filing the action to the receipt of the incomplete policy. Bullet was required to present an affidavit or other evidence to that effect if it expected to resist Glen Falls' motion on the basis of equitable estoppel. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

Accordingly, we find that the trial court did not err in refusing to apply the doctrine of estoppel or waiver, and that it properly determined that Bullet's breach of contract claim was barred by the limitations clause contained in the policy.

The first assignment of error is overruled.

"II. The trial court erred in sustaining appellee's motion for summary judgment since appellant's tort claim for breach of the duty of good faith and fair dealing was separate and distinct and would survive despite the resolution of the contractual claim."

In its amended complaint, Bullet set forth two distinct causes of action, *i.e.*, breach of contract and breach of the duty of good faith. In the first assignment of error, we determined that the trial court properly granted summary judgment in favor of Glen Falls on the first cause of action, and we now consider whether its action in granting summary judgment to Glen Falls on the second cause of action was likewise proper.

In Ohio, it is well established that insurers have a duty to act in good faith in the processing and payment of the claims of their insureds. The duty of good faith is implied in law and is perhaps best explained by the Ohio Supreme Court in *Motorists Mut. Ins. Co. v. Said* (1992), 63 Ohio St.3d 690, 590 N.E.2d 1228. In *Motorists*, the court stated:

"A breach of this duty will give rise to a cause of action in tort against the insurer. * * * The tort of bad faith is not a tortious breach of contract, for no matter how willful or malicious the breach, it is no tort to breach a contract. * * * Rather, the tort of bad faith arises as a consequence of a breach of a duty established by a particular contractual relationship. * * * The duty may be breached only by an intentional failure by the insurer to perform under its contract with the insured." *Id.* at 694–695, 590 N.E.2d at 1232–1233, citing, in part, *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315.

 Therefore, a cause of action for the tort of bad faith may exist irrespective of any liability arising from a breach of contract and may, in certain circumstances, be brought as a separate cause of action. Moreover, limitations clauses contained in the contract are inapplicable to claims based upon a breach of the duty of good faith. *Plant v. Illinois Emp. Ins. of Wausau* (1984), 20 Ohio App.3d 236, 20 OBR 297, 485 N.E.2d 773; *McDonald v. Am. Select Ins. Co.* (Aug. 31, 1988), Champaign App.No. 87–CA–02, unreported.

 That is not to say, however, that such claims are entirely immune from limitation. Rather, claims based upon a breach of the duty of good faith are tort claims and, as such, are controlled by the four-year limitations period established by R.C. 2305.09(D).

In this case, although Bullet does not allege with any specificity its grounds for alleging that Glen Falls breached its duty of good faith, it does indicate that the claim is based on the insurance company's "actions in refusing to pay for the covered loss." These actions, whatever they might be, ceased, at the earliest, on March 14, 1989, the loss date, and at the latest, on June 14, 1989, when Glen Falls sent a second letter to Bullet reiterating its decision to deny coverage. Thus, the period of limitations expires no sooner March 14, 1993. Bullet's complaint was filed on May 1, 1991, well within the statute of limitations period. Thus, the trial court could not have properly granted Glen Falls' motion for summary judgment on the grounds that this claim was time barred.

 Notwithstanding this determination, Glen Falls argues that the trial court's decision to grant summary judgment on the tort claim was not in error because it is axiomatic that to succeed on the tort claim for a breach of the duty to act in good faith, the insured must succeed on the underlying contract claim. We disagree.

As stated above, the tort of bad faith is an independent claim which does not necessarily rely on a breach of contract claim for its existence. Indeed, these two types of claims are often, perhaps even generally, asserted together and the basis for both claims is the refusal to pay insurance. However, a cause of action for

the tort of bad faith may be asserted "when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal." *Motorists, supra,* 63 Ohio St.3d at 699–700, 590 N.E.2d at 1236. In the first type of bad faith claim, it is reasonable to assume that the plaintiff asserting both a breach of contract claim and the tort claim of bad faith will have to succeed as to the contract claim if he is to succeed on the tort claim. This correlation of results occurs because in this type of bad faith tort claim, the plaintiff, in order to establish the tort claim, must first prove that the insurer had no lawful basis for refusing to satisfy his contract claim, thereby necessarily establishing the proof necessary for the breach of contract claim. Only then can the plaintiff establish the tort claim by proving that the insurer had actual knowledge that its refusal to satisfy the contract claim was without lawful basis. Thus, in this type of bad faith claim, Glen Falls is, in theory, correct in saying that success on the bad faith claim is dependent on success on the contract claim.

However, this is not true in cases which involve the second type of bad faith claim because, in such cases, there is no requirement that the plaintiff establish that the insurer had no lawful basis for refusing to satisfy the claim. Rather, the plaintiff need only establish that the insurer intentionally failed to determine whether its refusal had a lawful basis. Therefore, it is entirely possible that the plaintiff in this type of bad faith claim is unable to establish that the insurance company's refusal to satisfy the contract claim was unlawful, thereby negating any·chance of his succeeding on a breach of contract claim, but at the same time he can nevertheless establish that the insurer intentionally failed to determine whether its refusal had a lawful basis, thereby establishing the bad faith claim.

█ As stated above, Bullet's claim of bad faith was never presented with any specificity and, hence, we are unable to determine which of the two types of bad faith claim Bullet asserts. Nonetheless, we hold that even had Bullet asserted the first type of claim, thereby necessitating proof that Glen Falls breached the insurance contract in order to succeed on the bad faith claim, the granting of summary judgment on the contract claim does not prevent Bullet from asserting, and indeed prevailing on, its bad faith claim.

The summary judgment in this case was granted on the basis of the contractual limitations clause. The trial court did not consider the merits of Bullet's contract claim and made no determination whether Glen Falls' refusal to satisfy the contract claim was lawful. Therefore, the fact that summary judgment was granted on the contract claim is not dispositive of whether Bullet can prevail on its bad faith claim, even if it is of the first type.

Accordingly, the second assignment of error is sustained.

The decision of the Montgomery County Court of Common Pleas will be reversed and the matter will be remanded for further proceedings consistent with this opinion.

*Judgment accordingly.*

WILSON and GRADY, JJ., concur.