{¶ 16} I concur with the majority but write separately to clarify the basis for my concurrence. The issue on which the majority bases its decision is whether a bad faith claim is cognizable even in the absence of coverage. Because we appear to be deviating from relevant case law on this issue, I believe we must explain the case at bar in the context of the case law, especially precedent from this court. The two lines of Ohio case law are comprehensively reviewed in Toledo-Lucas County PortAuthority v. Axa Marine Aviation Insurance (2002), 220 F. Supp. d 868, which notes that the Ohio Supreme Court has not yet considered this question.
 {¶ 17} One line of cases relies upon Bullet Trucking, Inc. v. GlenFalls Ins. Co. (1992), 84 Ohio App.3d 327. In Bullet the trial court had granted summary judgment on the bad faith claim "because it is axiomatic that to succeed on the tort claim for a breach of the duty to act in good faith, the insured must succeed on the underlying contract claim." Id. at 333. Rejecting this argument, the Second Appellate District explained, "the tort of bad faith is an independent claim which does not necessarily rely on a breach of contract claim for its existence."
 {¶ 18} Another line of cases has followed a different analysis. InPasco v. State Auto. Mut. Ins. Co., (Dec. 21. 1999), Franklin App. No. 99AP-430, the Tenth Appellate District affirmed the trial court's ruling rejecting a bad faith claim because "an insurer has no obligation to pay or settle a claim for which the policy does not provide coverage."[1]
 {¶ 19} Cases relying upon Bullet, have cited the Ohio Supreme Court case of Zoppo v. Homstead Insurance Co. (1994), 71 Ohio St.3d 552, in support of the position that the insured does not have to show it is entitled to coverage under its insurance policy. I do not agree with this interpretation of Zoppo. The Ohio Supreme Court never addressed this issue. In that case, the appellate court had focused on the need to show actual intent. In reversing, the Supreme Court rejected only actual intent as a necessary element to prove bad faith, nothing more.
 {¶ 20} In Bob Schmitt Homes, Inc. v. The Cincinnati Insurance Co.
(Feb. 24, 2000), Cuyahoga App. No. 75263, the Eighth District also disagreed that Zoppo ruled on the issue before us. In Schmitt, the complaint filed against the insured had alleged only negligence in design and construction; the insured concluded, therefore, that a jury verdict against the insured was based on negligence. Because this type of negligence fell under an exclusion in the contract, the insured refused to pay the judgment. The insured claimed, however, that the insurer breached its duty of good faith because the insurer failed to determine independently the cause of damage to the insured. The insured argued that "an insured may maintain an action for bad faith against its insurer without having to show that it is entitled to coverage under the policy of insurance."
 {¶ 21} Finding no merit in this contention, this court explained: "The rule announced in Zoppo presupposes that the insured is entitled to coverage in the first instance. * * * Therefore, since the initial factual prerequisite to this claim is lacking, summary judgment in favor of [the insurer] on [the insured's] bad faith claim was appropriate." BobSchmitt Homes, Inc., supra. The question before us is whether this presupposition also applies to the facts in the case at bar. I think not.
 {¶ 22} After reviewing Ohio case law, the U.S. District Court offered the following distinction: "In Bullet, the court addressed the issue of whether an insured must succeed on its breach of contract claim in order to maintain a bad faith claim. This issue, however, is separate and distinct form [sic] the issue raised here: namely, whether coverage must exist in the first instance in order to maintain a bad faith claim."Toledo-Lucas County Port Authority, supra, at 873.
 {¶ 23} Bullet was a first-party claim, whereas Toledo-Lucas CountyPort Authority arose from a third-party claim. The distinction made inToledo-Lucas may rest upon the difference between a first-party claim and a third-party claim. In the first type of claim, there is a clear contract between the insured and the insurer. There can be no doubt that, on questions of coverage, the insurer has a duty — arising from that contract-of good faith.
 {¶ 24} Moreover, although the duty of good faith arises from the contract, any tort claim for bad faith under these circumstances is independent of a breach of contract claim. In other words, the insurer has a duty to resolve any policy claims in a timely manner. On the other hand, when there is no contract between the insurer and the claimant, then determining coverage may be, depending on the circumstances, a threshold question.
 {¶ 25} Another variation of this issue occurs when the insurer is obliged to provide a legal defense for the insured. Under those circumstances, when the first court battle is between the insured and the tortfeasor, an insurer's reservation of rights may be appropriate. The insured may properly await the outcome of a trial that determines negligence to decide whether a claim is excluded for negligence. Under these circumstances, the bad faith question may properly depend upon coverage. This was the decision in the Pasco and Schmitt cases. InSchmitt, the claimant argued that the insurer was obliged to"independently determine the cause of the damage" and that failing to do so constituted bad faith. It was this issue the court was addressing when it decided there was no such obligation. Because the trial determined the insured was negligent and therefore was not entitled to coverage under the insurance policy — and the insurer had properly undertaken thedefense of its insured — his court held that the insurer had not breached its duty of good faith.
 {¶ 26} That, however, is not the issue here. Thus we are not deviating from precedent established by Schmitt. In the case at bar, the contract was clear. There was no need to provide a legal defense. There was no claim from a third party. Because of the nature of the claim, I agree with the majority that the tort claim here is independent of the contract claim. The only question was whether the insured's claim under the policy was processed in good faith.
 {¶ 27} However, even though the tort claim for bad faith is independent of the breach of contract claim, there is still the need to demonstrate damages arising solely from the bad faith claim. In the recent case of Dardinger v. Anthem Blue Cross Blue Shield,98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, the claimant suffered enormous and demonstrable damages from the failure of the insurance company to pay for intra-arterial chemotherapy. Damages from an insurance company's failure to pay on an insurance claim, however, are more tenuous.
 {¶ 28} In the case at bar, there is no doubt that, because of policy limits and because the tortfeasor was insured, plaintiff was not covered under the uninsured motorist provision of his insurance contract. Thus plaintiff has no right to damages under that contract. His only cause of action is a tort claim for bad faith. However, "* * * tort recovery for bad faith is in no way concerned with the damages sustained from a covered, or, for that matter, an uncovered, loss. The damages sought focus exclusively on the damages incurred as a result of the insurer's conduct in handling the insured's claim and are completely separate from the damages suffered as a result of the covered or uncovered loss." Reeve, Note: Judicial Tort Reform: Bad Faith Cannot Be Predicated Upon The Denial Of A Claim For An Invalid Reason If A Valid Reason Is Later Shown: Republic Insurance Co. v. Stoker, 903 S.W.3d 338
(Tex. 1995), 27 Tex. Tech L. Rev. 351 (1996).
 {¶ 29} In his complaint in the case at bar, the insured alleged damages of $150,000 arising from the auto collision. He also claimed medical expenses in excess of $5,000. Finally, he alleged damages of $200,000 from the "severe mental harm and emotional distress" that resulted from defendant's "refusal to pay or fairly negotiate * * *." Although these damages could qualify as compensatory, in his prayer plaintiff expressly classified these damages as "punitive damages."[2]
In his complaint, he has not classified any damages arising from the bad faith claim as specifically compensatory. For punitive damages to be awarded, plaintiff is required to prove a harm distinct from the policy claim and attributable solely to the alleged bad faith claim. The Supreme Court of Ohio explained this principle as follows:
 {¶ 30} "Shimola and Bishop, supra, stand for the age-old proposition that proof of actual damages in an underlying cause of action is a necessary predicate for an award of punitive damages. See, also,Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 10 OBR 408,461 N.E.2d 1273, and Richard v. Hunter (1949), 151 Ohio St. 185,39 O.O. 24, 85 N.E.2d 109. In Ohio, no civil action may be maintained simply forpunitive damages. Bishop, supra, 20 Ohio St.3d at 28, 20 OBR at 214, 485 N.E.2d at 705. Rather, punitive damages are awarded as a mere incident of the cause of action in which they are sought. Id. Thus, compensable harm stemming from a cognizable cause of action must be shown to exist before punitive damages can be considered." Moskovitz v. Mt. Sinai MedicalCenter (1994), 69 Ohio St.3d 638, 1994-Ohio-324. Emphasis added.
 {¶ 31} In the case at bar, because the tort claim is independent of the policy claim, the underlying cause of action is the tort claim itself. In his tort claim for bad faith, the insured has specified only punitive damages. Since this matter is being remanded, this language can be clarified. Otherwise, on the face of the complaint the court could have rejected the tort claim for failure to state a claim upon which relief can be granted. Since the insurer did not address this issue in its motion for summary judgment, however, I believe the better practice is to remand the case.
 {¶ 32} I note also my concern over the vagueness in the record for any support of the claim of bad faith. Nothing in the record explains why the insurance company failed to pay the insured's claim when, at the time, the company apparently believed the insured's policy covered the accident. Indeed, for the first time on appeal, the insurer claims it never denied the claim of its insured. The insured, however, alleges in his complaint that Permanent General denied his claim.
 {¶ 33} In her deposition, the claims adjuster states she determined the other driver was clearly liable and that "Permanent General was bound to honor [its insured's] claim" "if the other party was uninsured." Depo. p. 36. Further, the claims adjuster admitted that she requested evidence that the other party was uninsured and agreed "that the evidence was received * * *." At that point the deposition ended, without establishing whether the claims adjuster disputed the evidence.
 {¶ 34} Attached to the response to the insurer's motion for summary judgment is a report from a third party asked to review the events and documents; however, I find no affidavit verifying this report. Nor are the documents which he discusses in the record. Thus we are left with a very murky record on what happened between the insurer and insured.[3]
 {¶ 35} I therefore agree that the motion for summary judgment be reversed and the case remanded.
[1] Similarly, in Buckeye Union Ins. Co. v. Sate Farm Mut. Auto. Ins.Co. (Apr. 16, 1997), Hamilton App. No. C-960282, the First Appellate District, affirming summary judgment for the insurer, explained that "the duty of good faith and fair dealing arises by virtue of, and thus exists solely because of, the contractual relationship between the insurer and its insured." Because the court found there was no "actual or potential claim" against the insurer for which the "auto policy might arguably have provided liability coverage, the contractual relationship * * * cannot be said to have been implicated." The court concluded, therefore, "the law imposed * * * no duty of good faith and fair dealing * * *."
[2] In his brief opposing the motion for summary judgment, however, he mentions both compensatory and punitive damages.
[3] {¶ a} Under rules established by the Ohio Department of Insurance regarding general standards for settlement of claims: "An insurer shall within twenty-one days of the receipt of properly executed proof(s) of loss decide whether to accept or deny such claim(s). If more time is needed to investigate the claim than the twenty-one days allow, the insurer shall notify the claimant within the twenty-one day period, and provide an explanation of the need for more time. If an extension of time is needed, the insurer has a continuing obligation to notify the claimant in writing, at least every forty-five days of the status of the investigation and the continued time for the investigation." Ohio Adm. Code 3901-1-54(G)(1).
{¶ b} Unfortunately, this rule, according to section (B), does not create or imply a private cause of action, although the rule clearly establishes the standards to be followed.