[Cite as *Ballard v. Nationwide Ins. Co.*, 2015-Ohio-4474.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| LATIA N. BALLARD, et al., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 14 MA 85 |
| V. | ) | |
| | ) | OPINION |
| NATIONWIDE INSURANCE COMPANY, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 10CV1132

JUDGMENT:    Reversed and Remanded

APPEARANCES:

For Plaintiffs-Appellants    Attorney Angela J. Mikulka
Attorney Thomas L. Mikulka
134 Westchester Drive
Youngstown, Ohio 44515

For Defendant-Appellee    Attorney John C. Pfau
P.O. Box 9070
Youngstown, Ohio 44513

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Carol Ann Robb

Dated: October 22, 2015

DONOFRIO, P.J.

{¶1} Plaintiffs-appellants, Latia Ballard and James Glenn, appeal from a Mahoning County Common Pleas Court judgment granting summary judgment in favor of defendant-appellee, Nationwide Insurance Company, on appellants' claim for bad faith.

{¶2} Appellants were involved in an automobile accident on February 6, 2001. Glenn was driving and Ballard was a passenger in his car. Glenn was insured by Nationwide. Pursuant to the terms of the policy, Ballard was also an insured.

{¶3} The insurance policy contains a "medical benefit" provision, which provides that Nationwide will pay "usual, customary and reasonable charges—not to exceed $5,000—for medically necessary services." Appellants both submitted medical claims pursuant to this provision.

{¶4} Nationwide initially allowed Glenn's claim and issued him a check. But Glenn's counsel returned the check and asked that Nationwide reissue it in the name of the medical provider. Nationwide then denied Glenn's claim as well as Ballard's claim.

{¶5} Appellants filed a complaint against Nationwide raising claims for breach of contract and bad faith denial of coverage.

{¶6} Nationwide filed a motion for summary judgment on the breach of contract claims, where it argued that in light of appellants' full settlement with the tortfeasor, they could not establish damages. The trial court granted summary judgment in Nationwide's favor. Appellants filed an appeal with this court. *Ballard v. Nationwide*, 7th Dist. No. 11 MA 122, 2013-Ohio-2316.

{¶7} On appeal, this court found that appellants completely settled their personal injury claims with the tortfeasor, including their claims for medical expenses. *Id.* at ¶18. Because of this settlement, we found appellants agreed they had been reimbursed for their medical expenses. *Id.* We went on to conclude that if there were no medical expenses to reimburse, there were no damages in the breach of contract claims. *Id.* In affirming the trial court's grant of summary judgment on the breach of contract claims, we noted that the bad faith denial of coverage claims remained pending in the trial court. *Id.* at ¶30.

**{¶8}** Back in the trial court, Nationwide filed a motion for summary judgment on appellants' bad faith claims. It relied on a finding in the trial court's previous summary judgment ruling:

Defendant Nationwide investigated the claims under the medical payments benefits of the Nationwide policy in effect, which included a chiropractic records review. Defendant Nationwide did not pay the medical expenses under the coverage since their investigation supported that the medical expenses were not related to the accident.

(July 18, 2011, Judgment Entry). Nationwide argued there was no genuine issue of material fact on the bad faith claims because the denial of the claims was fairly debatable and it was reasonably justified in denying appellants' claims. It also argued that appellants' bad faith claims were dependent on their success on their breach of contract claims. And because appellants failed on their breach of contract claims, Nationwide argues, appellants' bad faith claims necessarily failed.

**{¶9}** Appellants filed a memorandum in opposition to the summary judgment motion arguing reasonable minds could differ on the issue of whether Nationwide failed to handle their claims in good faith.

**{¶10}** The trial court granted Nationwide's motion for summary judgment. It found the evidence did not reach a threshold level to support a bad faith claim. The court noted that this court upheld its grant of summary judgment on the breach of contract claim. It found that even when there is a factual dispute that takes a breach of contract claim to a jury, this operates to preclude a bad faith claim. It further found the claims here were "fairly debatable" and therefore, based upon reasonable justification. The court pointed out that a factual finding was already made that Nationwide's investigation supported that the medical expenses were not related to the accident, which was further supported by a chiropractic peer review report establishing that the issue was fairly debatable and Nationwide was justified in its denial. Because the issue was fairly debatable, the trial court found this demonstrated that Nationwide's decision was not arbitrary or capricious but was

instead based on reasonable justification. Moreover, the court found the bad faith claims were contingent on the breach of contract claims. Therefore, the court granted summary judgment on the bad faith claims.

**{¶11}** Appellants filed a timely notice of appeal on July 8, 2014.

**{¶12}** Appellants now raise two assignments of error. The first assignment of error deals with Ballard's claim while the second assignment of error deals with Glenn's claim. Both assignments of error assert the trial court should not have granted Nationwide's summary judgment motion on the bad faith claims.

**{¶13}** In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶14}** The first assignment of error states:

THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT NATIONWIDE DID NOT UNREASONABLY DELAY EITHER THE PROCESSING AND PAYMENT OR THE FORMAL DENIAL OF PLAINTIFF-APPELLANT BALLARD'S MEDICAL PAYMENTS CLAIM FOR A PERIOD OF ESSENTIALLY ELEVEN MONTHS.

**{¶15}** Ballard argues the facts here raise a bad faith claim for failure to

process and either pay or deny her medical payments claim within a reasonable time. She asserts the issue can only be resolved by a trier of fact. She points out that her counsel submitted her medical payments claim to Nationwide on September 20, 2001, and, after receiving no response, sent reminder letters on October 29, 2001, February 6, 2002, and April 2, 2002. Ballard asserts the only attempt by Nationwide to contact her counsel was an October 10, 2001 phone call to request a medical packet. She claims Nationwide made no other contact with her counsel until it sent a denial letter on August 30, 2002. Thus, Ballard argues Nationwide's action of leaving her medical payments claim pending for ten months without any written communication raises a jury question as to whether Nationwide acted in bad faith.

**{¶16}** An insurer owes a duty to its insured to act in good faith in the processing, payment, satisfaction, and settlement of the insured's claims. *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St. 3d 621, 629, 605 N.E.2d 936 (1992).

**{¶17}** There are two types of bad faith claims: (1) when an insurer breaches its duty of good faith by intentionally refusing to pay an insured's claim where there is no lawful basis for the refusal coupled with actual knowledge of that fact; and (2) when an insurer breaches its duty of good faith by intentionally refusing to pay an insured's claim where the insurer intentionally failed to determine whether there was any lawful basis for such refusal. *Essad v. Cincinnati Cas. Co.*, 7th Dist. No. 00 CA 199, 2002-Ohio-2002, ¶32, citing *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 590 N.E.2d 1228 (1992), overruled to the extent that the decision is inconsistent with the ruling in *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), syllabus (holding that actual intent as laid out by *Said* is not an element of a bad faith claim, rather the standard is reasonable justification). The language in the two types of bad faith that require actual knowledge and intentional failure, now requires reasonable justification. *Id.*, citing *Zoppo*, 71 Ohio St.3d at 552.

**{¶18}** In *Essad*, this court discussed the two types of bad faith claims and whether they can succeed when the corresponding breach of contract claim failed:

In the first type of bad faith claim, plaintiff must prove that the insurer had no lawful basis to deny coverage. [*Bullet Trucking Inc. v. Glenn Falls Ins. Co.*], 84 Ohio App.3d [327] at 333, 616 N.E.2d 1123 [(1992)]. By proving this, plaintiff is proving his contract claim. *Id.* Therefore, in the first type of bad faith claim, the success of the tort claim hinges on the success of the contract claim.

However, the second type of bad faith claim is not as dependent on the contract claim. *Id.* In the second type of claim, the insured need only establish that the insurer had no reasonable justification to fail to determine whether its refusal had a lawful basis. See *Zoppo*, 71 Ohio St.3d at 552, 644 N.E.2d 397; *Said*, 63 Ohio St.3d at 690, 590 N.E.2d 1228. Therefore, it is possible that the insured would be unable to prove the insurance company's refusal to pay on the claim was unlawful, but still be able to prove that insurer failed to determine whether the refusal had a lawful basis.

Id. at ¶¶ 34-35.

{¶19} In their complaint, Ballard's claims for bad faith assert:

10. Plaintiff BALLARD states that NATIONWIDE denied her medical payments claim without reasonable justification and failed to handle her claim in good faith and fair dealing, thereby committing the tort of bad faith.

11. Plaintiff * * * states that NATIONWIDE failed to act in good faith and fair dealing in the processing of her medical payments claim when, without reasonable justification, it relied solely on the opinions and conclusions of a medical reviewer hired by NATIONWIDE, while failing and/or refusing to give due consideration to the medical evidence and opinions of her treating medical providers.

(Complaint ¶¶10-11).

{¶20} The language of the complaint can be construed as asserting the second type of bad faith claim. It alleges that Nationwide did not have reasonable justification to fail to determine whether its refusal to pay had a lawful basis. Moreover, it asserts Nationwide failed to act in good faith and fair dealing in handling the claim.

{¶21} The evidence presented raises a genuine issue of material fact regarding whether Nationwide acted in bad faith in handling Ballard's claim.

{¶22} Sue Bilyew was the Nationwide claims' adjuster assigned to this case. Bilyew was assigned the case on May 23, 2001. (Bilyew Dep. 24-25). Bilyew did not do anything with the case for approximately three-and-a-half months. (Bilyew Dep. 26). The first contact Bilyew made with Ballard's counsel was a September 5, 2001 phone conversation with a paralegal at counsel's office where Bilyew inquired about Ballard's treatment and medical bills. (Bilyew Dep. 25). The next contact Bilyew had with Ballard's' counsel was an October 10, 2001 phone conversation, again with a paralegal. (Bilyew Dep. 29). After the October 10, 2001 phone conversation, there was no contact between Bilyew and Ballard's counsel until June 7, 2002, when Bilyew telephoned Ballard's counsel and left a message. (Bilyew Dep. Ex. 4-1).

{¶23} Bilyew did discuss other contacts she had during the time from October 10, 2001, to June 7, 2002, with Glenn's counsel. But Glenn and Ballard had different counsel. And there is no indication of any contact between Bilyew and Ballard's counsel from October 10, 2001, through June 7, 2002.

{¶24} After Ballard's claim was assigned, three-and-a-half months passed before any action was taken on it. Bilyew then made two telephone calls to Ballard's counsel. After that, she made no further contact with Ballard's counsel for eight months. This evidence is sufficient to create a genuine issue of material fact as to whether Nationwide acted in bad faith in handling Ballard's claim. Even when the ultimate denial of the claim was justified, it may still be shown that Nationwide breached its duty of good faith by refusing to pay the claim for such an extended period of time without communicating with the claimant in order to determine whether there was a lawful basis for the refusal. Therefore, summary judgment was not

appropriate on Ballard's claim for bad faith.

{¶25} Accordingly, appellants' first assignment of error relating to Ballard's claim has merit.

{¶26} Appellants' second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO NATIONWIDE ON THE GLENN MEDICAL PAYMENTS CLAIM WHERE THE CLAIM WAS ORIGINALLY APPROVED AND PAID TO THE MINOR CLAIMANT; REQUEST FOR RE-ISSUANCE OF THE CHECK DIRECTLY TO THE PROVIDER WAS IGNORED; AND NATIONWIDE HAD NO CONTRARY MEDICAL INFORMATION FOR 9 MONTHS UPON WHICH TO DENY THE GLENN MED PAY CLAIM AFTER THE FIRST CHECK HAD BEEN APPROVED AND ISSUED.

{¶27} Glenn points out that Nationwide initially accepted his medical payments claim and issued a check to him on October 23, 2001. Glenn asserts that his counsel returned the check on October 26, 2001, and requested Nationwide to re-issue the check in the name of the medical provider. Glenn argues that Nationwide then "left him hanging." He claims Nationwide did not re-issue the check and did not make any final determination for ten months after it issued the original check.

{¶28} An insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the insurance policy. *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. The Ohio Supreme Court set out the standard to determine whether an insurer has breached its duty to its insured to act in good faith: "'[A]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor [sic.].'" *Zoppo*, 71 Ohio St.3d at 554, quoting *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 303, 525 N.E.2d 783 (1988). The Court also noted that intent is not an element of the reasonable justification standard. *Id.* at 555.

**{¶29}** Nationwide initially accepted Glenn's medical payments claim and issued him a check in the amount of $2,200.70 in October 2001. (Bilyew Dep. 30). Glenn's counsel returned the check and asked Nationwide to simply re-issue the check in the medical provider's name. (Bilyew Dep. 30). Instead of re-issuing the check, Nationwide ultimately denied Glenn's claim on August 30, 2002. Nationwide did not re-issue the check or deny the claim for ten months after initially allowing it. During this ten-month period, Bilyew did have some telephone contact with Glenn's counsel. (Bilyew Dep. 25-29; Ex. 4-1). But the matter remained outstanding for ten months.

**{¶30}** Given that Nationwide initially issued a check to pay Glenn's claim and then waited ten months before ultimately denying the claim, a genuine issue of material fact exists as to whether Nationwide acted in bad faith. While the ultimate denial of the claim may have been proper, a question of fact remains as to whether Nationwide's delay in reaching that decision, coupled with the fact that it originally issued payment on the claim, may demonstrate that it acted in bad faith. Consequently, summary judgment on Glenn's bad faith claim was not warranted.

**{¶31}** Accordingly, appellants' second assignment of error has merit.

**{¶32}** For the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded for further proceedings pursuant to law and consistent with this opinion.

Waite, J., concurs.
Robb, J., dissents with attached dissenting opinion.

Robb, J., dissenting opinion.

**{¶33}** I respectfully dissent from the decision reached by my colleagues. Both assignments of error lack merit and the decision of the trial court should be affirmed.

A. Summary Judgment Against Appellant Ballard – First Assignment of Error

**{¶34}** In paragraphs 16 through 18, the majority opinion sets forth the law regarding an insurer's duty to act in good faith in processing, payment, satisfaction and settlement of an insured's claim. I do not disagree with the law as set forth in

those paragraphs.

**{¶35}** However, I do disagree with the conclusion reached in paragraph 20 of the majority opinion. The language of the complaint should not be construed as asserting the second type of bad faith claim; the complaint did not assert that Nationwide did not have reasonable justification to fail to determine whether its refusal to pay had a lawful basis.

**{¶36}** In their complaint, Appellants' claims for bad faith assert:

> 10. Plaintiff BALLARD states that NATIONWIDE denied her medical payments claim without reasonable justification and failed to handle her claim in good faith and fair dealing, thereby committing the tort of bad faith.
>
> 11.[21.] Plaintiff * * * states that NATIONWIDE failed to act in good faith and fair dealing in the processing of her[his] medical payments claim when, without reasonable justification, it relied solely on the opinions and conclusions of a medical reviewer hired by NATIONWIDE, while failing and/or refusing to give due consideration to the medical evidence and opinions of her[his] treating medical providers.
>
> * * *
>
> 20. Plaintiff GLENN states that NATIONWIDE first accepted and thereafter changed its position and fully denied his medical payments claim without reasonable justification and failed to handle his claim in good faith and fair dealing, thereby committing the tort of bad faith.

(Complaint ¶¶10-11, 20-21).

**{¶37}** In my opinion, this language only asserts the first type of bad faith claim – that Nationwide had no lawful basis to deny coverage. Their complaint does not assert that Nationwide had no reasonable justification to fail to determine whether its refusal to pay had a lawful basis. The trial court already ruled that Nationwide had a lawful basis to deny coverage. This court affirmed that judgment. Therefore,

because Appellants' breach of contract claims failed, Appellants' bad faith claims also fail. Thus, for that reason, I would uphold the trial court's grant of summary judgment for Nationwide against Appellant Ballard.

{¶38} Yet, even if the language of the complaint could be construed to assert the claim that Nationwide did not have reasonable justification to fail to determine whether its refusal to pay had a lawful basis and that Nationwide failed to act in good faith and fair dealing in handling the claim, I would still uphold the grant of summary judgment for Nationwide.

{¶39} Nationwide argued to the trial court and argues on appeal that its investigation supports the notion that the medical payment claims were "fairly debatable." Because these claims were fairly debatable, Nationwide contends the trial court properly granted summary judgment on the bad faith claims.

{¶40} In concluding there is a genuine issue of material fact concerning those claims, the majority focuses solely on the communication that occurred between Nationwide and Appellants. Specifically, the two telephone calls to Appellant Ballard's counsel and some telephone contact with Glenn's counsel. ¶ 22-24, 29 of the Majority. There is no discussion concerning all other acts taken by Nationwide in processing Appellants' claims.

{¶41} Nationwide asserted its adjuster, Sue Bilyew, had concerns regarding Ballard's and Glenn's claims because they had identical treatment with the same providers and had both indicated to the police officer at the scene that they were not injured.

{¶42} The record discloses that Bilyew took multiple actions to investigate those concerns. On September 5, 2001, Bilyew had a phone conversation with a paralegal from Appellant Ballard's Attorney's office. Exhibit 4; Bilyew Depo. 25-26. She inquired about treatment and medical bills. Exhibit 4. On September 6, 2001, Bilyew called Appellant Glenn's Attorney's office and left a message regarding treatment status. Exhibit 4; Bilyew Depo. 26. On September 20, 2004, Bilyew was instructed by her supervisor to make another attempt to contact Appellants' attorneys and if that attempt was unsuccessful to send a "10 day letter." Exhibit 4; Bilyew

Depo. 27. Four days later, Bilyew received a phone call from Appellant Glenn's Attorney's office indicating they were sending medical bills. Exhibit 4; Bilyew Depo. 27. Those medical bills were received on October 10, 2001; some were received from Appellant Glenn's Attorney and one was received from Dr. Dustman, a chiropractor. Exhibit 4; Bilyew Depo. 27-29. Upon receiving those bills, Bilyew called and requested itemized bills. Exhibit 4; Bilyew Depo. 27-29. That same day, Bilyew phoned Appellant Ballard's attorney and left another message requesting the medical packet be mailed back to Nationwide. Exhibit 4; Bilyew Depo. 27-29. On October 24, 2001, Bilyew called Appellant Glenn's Attorney and left a message that she needed information about the damage to the insured vehicle. Exhibit 4; Bilyew Depo. 29. On November 5, 2001, Bilyew made a phone call to Appellant Glenn's Attorney's office. She spoke to paralegal who told her he did not have information about pre-existing injuries and that the medical records were sent out on October 26. Exhibit 4; Bilyew Depo. 29-30. Bilyew noted that as of November 5, 2001, she had not received those records. Exhibit 4; Bilyew Depo. 29-30. On January 31, 2002, she received medical records from Doctors Dustman and Astre. Exhibit 4; Bilyew Depo. 30, 36. The log for that date indicates that the matter was being forwarded to peer review. Exhibit 4. On April 18, 2002, Bilyew had a phone conversation with Appellant Glenn. On April 19, 2002, Bilyew received more medical records from Dr. Dustman concerning Appellant Ballard. Exhibit 4; Bilyew Depo 40-41. That same day, Bilyew had a telephone conversation with Appellant Glenn's Attorney. Counsel requested Bilyew assist in negotiating the medical bills with the chiropractor and therapist. Exhibit 4. On June 7, 2002, Bilyew called the attorneys for Appellants and left messages. On June 11, 2002 and July 23, 2002, she once again telephoned Appellant Glenn's Attorney and left a message. Exhibit 4. The July 23, 2002 log state that the case is over a year old, Appellant Glenn's attorney was attempting to settle the medical bills with the providers and Bilyew will continue contact with the attorney. The log also indicates that a peer review may be needed and a 45 day letter was sent. Exhibit 4; Bilyew Depo. 57. The peer review report from Dr. Jenkins was received on August 15, 2002. Exhibit 4; Bilyew Depo. 58. Four days later, on

August 19, 2002, Bilyew contacted Appellants' attorneys, but received no response. August 26, 2002, she once again called Appellant Glenn's Attorney and left another message. Exhibit 4. Four days later, after receiving no response from the attorneys, she sent a copy of the peer review and the denial of the claims to the attorneys. She then closed the file. Exhibit 4.

**{¶43}** "[T]o prevail against a motion for summary judgment in a bad faith claim, an insured must put forth evidence that the claim was denied or unreasonably delayed and the insurer had no justification for such denial or delay." *Price v. Dillon*, 7th Dist. Nos. 07-MA-75, 07-MA-76, 2008-Ohio-1178, ¶ 35 (a seven month delay in paying a claim without more is not evidence of bad faith), quoting *Piedmont Corp. v. Midwestern Indem. Co.*, 6th Dist. No. WD-00-018 (Nov. 30, 2000), citing *Tokles & Son v. Midwestern Indem. Co.*, 65 Ohio St.3d 621, 630, 605 N.E.2d 936 (1992), overruled in part on other grounds in *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 644 N.E.2d 397 (1994). The above evidence demonstrates that Nationwide investigated the claim and it was not unreasonably delayed. Even when viewing the evidence in the light most favorable to Appellants, it cannot be concluded that there is a genuine issue of material fact that Nationwide acted in bad faith in handling the claim. Focusing solely on the communication between Bilyew to Ballard's counsel fails to acknowledge all other acts taken by Nationwide to process the claims. While communication is important, it is not the only aspect of processing a claim.

### B. Second Assignment of Error – Summary Judgment Against Glenn

**{¶44}** I agree with the law as set forth in paragraph 28 of the majority opinion. However, I disagree with the conclusion that a genuine issue of material fact exists as to whether Nationwide acted in bad faith when it issued a check to pay Appellant Glenn's claim and then waited ten months before ultimately denying the claim.

**{¶45}** Nationwide asserted that when Appellant Glenn asked to have the check re-issued, Bilyew had just learned that Ballard's claim mirrored the same treatment dates and physicians as Glenn's claim. This raised her suspicion and triggered further review as set out in detail above.

**{¶46}** As stated above, the trial court found when ruling on the first summary

judgment motion that Nationwide investigated the claims under the medical payments benefits of the policy, which included a chiropractic records review. (July 18, 2011 Judgment Entry). It also found that Nationwide did not pay the medical expenses under the coverage because their investigation supported a finding that the medical expenses were not related to the accident. (July 18, 2011 Judgment Entry). And this court affirmed the trial court's judgment.

**{¶47}** Given the court's previous finding that Nationwide's investigation supported a finding that Appellants' medical expenses were not related to the accident, which we affirmed, it seems implausible that Nationwide acted in bad faith in refusing to pay Glenn's claim, even after initially allowing it. Thus, the trial court properly granted summary judgment on the bad faith claims.

**{¶48}** Furthermore, given all of the evidence discussed above, there is no genuine issue of material fact that Nationwide acted in bad faith in handling Appellant Glenn's claim. Although the matter may have remained outstanding for ten months, the facts as set forth above, indicate that Nationwide was actively processing the claim.

**{¶49}** For those reasons, I would find no merit with the second assignment of error.

C. Conclusion

**{¶50}** Accordingly, for the above stated reasons I would find no merit with either assignment of error and would affirm the trial court's decision.